# Staunton

## Mary B. Weaver, Executrix, etc. v. Harland Corporation, et al.

September 5, 1940.

Record No. 2242.

Present, All the Justices.

The opinion states the case.

*Jesse, Phillips & Klinge, Caldwell C. Kendrick* and *Joseph M. Pancoast,* for the appellants.

*Clarence R. Ahalt, James H. Simmonds, Leo P. Harlow* and *Marshall H. Lynn,* for the appellees.

BROWNING, J., delivered the opinion of the court.

The appellant, Mary Britt Weaver, Executrix, filed her bill and amended bill in this case to enforce a mechanic's lien, which she claimed to have upon twelve houses and lots in the bill and proceedings mentioned. The other appellants, to wit, Hajoca Corporation, Rosslyn Steel and Cement Corporation, Capital Materials Co., Inc., and Washington Brick Company, each a corporation, intervened by petitions filed in the suit, asserting similar liens against eight of the above twelve houses and lots. Demurrers to the bills and petitions were sustained by the trial court, and the proceedings were dismissed.

It seems well to state the events which brought about the situation with which we are concerned.

The Harland Corporation, one of the appellees, acquired by purchase a body of land in Brandon Village, in Arlington county, Virginia, which it subdivided into lots for the purpose of building houses thereon and disposing of them. It borrowed money, for the construction of the houses, from the Investors Syndicate, Inc., a loan company, which it secured by a first deed of trust on the properties. It was what is known as a construction loan. The money was furnished to the owner as the work on the buildings and lots progressed. There was a separate deed of trust on each house and lot securing the loan and also a separate deed of trust on each one securing the unpaid balance of the purchase price of each lot which was due to Eakin Properties, Inc., the seller and predecessor in title, to Harland Corporation. These latter were second trusts. These deeds of trust were all properly recorded.

Each of the mechanic's lien lienors, under contracts, some verbal and some written, with Harland Corporation, furnished labor and materials, of the character suggested by their firm names, in and about the construction of twenty houses to be erected upon as many lots by the Harland Corporation. The enterprise went along for awhile. The construction of the houses was in progress and the materialmen, the appellants, furnished the materials, as they were wanted, and were paid for them in part. Harland Corporation met with reverses. It could not meet its obligations. The mechanic's liens, referred to, were filed. The bills and petitions, already mentioned, were filed and a receiver was asked for and appointed by the court to take charge of its assets and business for the purpose of settlement. The receiver's report showed a balance of about $6,422.00 as assets, derived from the construction loans. This was reported as its only asset over and above any equity it might have in the houses and lots.

The appellants charged that their contracts were to furnish materials and labor for a stipulated price for the en-

tire number of houses which was regarded by the parties as one building project. Each filed one lien on a certain number of houses and lots, in one case twelve in number, and in each of the others eight, for materials which they had furnished for the entire number of twenty lots. Only a few of the houses were completed. They admitted, either by averment of the petitions, or by necessary inference, that upon payments made to them they had released certain of the houses and lots from their liens. In one case eight were released and in each of the other cases twelve were released. Nothing was alleged to indicate the quantity, value or character of materials which went into the construction of any particular house or houses. Indeed, some of the petitions contained the statement that it was impossible to segregate them. The mechanic's liens in each case were filed for the balance due the particular lienor.

A variety of interesting questions, some not without difficulty, growing out of the circumstances, were discussed in the written and oral arguments of counsel upon the hearing, but in the view we have of the case it is only necessary to consider one of them, and that is the effect of the releases of portions of the houses and lots upon the validity of the liens against the others for the balances alleged to be due.

We are aware of the fact that the authorities are not agreed as to this, but, we think, the weight of authority and the force of reason sustain the view that the release of a portion of the properties, under the circumstances of this case, embraced by the lien, precludes its successful assertion against the remainder. This is only true where the interests of other lien creditors are affected. It would not be so in the case of the owner and the lienor. It will be readily seen that if it were not so the mechanics lien lienors could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute

and would be offensive to good conscience and equity. This becomes obvious and the effect is accentuated in the very case of one of the appellants here. The original price charged by the Hajoca Corporation and its ally, the Apex Engineering Company, was $7,000.00, or an average of $350.00 per house, and that company, in this case, claims now a balance of $4,655.00 or an average of approximately $580.00 per house. It will be noted that the original price quoted was for twenty houses and the balance quoted is claimed as a lien against eight houses and lots. The brief of the appellees makes this apt statement of this circumstance: " * * * which clearly demonstrates the *injustice that might result to the owner and other meritious creditors* interested in the property which is the subject of the lien, if the law permitted a release of part of the security where a single contract is contended for, and permitted the lien creditor to fall back upon what remained, or *what he might select* for the payment of his claim."

In the case of *McGrew et al.* v. *McCarty et al.*, 78 Ind. 496, 498, involving a point in a mechanics lien case similar to that which we are considering, this is said:

"The theory of the law is that credit is given to the identical building for which the materials are furnished or upon which the work is done. Each building represents a distinct and separate security. One building can not be made to stand as the security for another. In truth, each building stands as a several debtor, and one can no more be made to discharge the debt of another building than one individual debtor can be made to pay a separate claim owing by somebody else to the same creditor. It is upon this principle that those cases may be sustained, which hold that a joint claim can not be supported by proof of a separate right. *Gorgas* v. *Douglas*, 6 Serg. & R. [Pa.] 512; *Morris County Bank* v. *Rockaway, etc., Co.* [16 N. J. Eq. 150], 1 C. E. Green, 150; *Barker* v. *Maxwell*, 8 Watts [Pa.] 478; *Chapin* v. *Persse, etc., Works*, 30 Conn. 461 [79 Am. Dec. 263]; *Landers* v. *Dexter*, 106 Mass. 531."

*Rathburn* v. *Landess et al.,* 100 Fla. 507, 511, 129 So. 738, 740, is a rather recent case which is, in some points, very like this. In that it is said:

"The lien claimant in this case contracted to furnish material for the building of two houses which were to be built on separate lots, one on lot 7 and the other on lot 8. It was like that contract referred to in the case of *West Coast Builders' Supply Co.* v. *Spears,* 96 Fla. 178, 117 So. 794. Both parties to the contract treated the two jobs as a unit and the materialman failed to keep account of the material going into each job separately. He also failed to file a notice of lien against each lot separately and in this he failed as to lot 8 to comply with that provision of the statute which is, 'Such notice shall contain a statement of the amount claimed, a description of the property upon which the lien is claimed and a notice of the intention to hold a lien for the said amount.' Comp. Gen. Laws 1927, section 5380. The meaning of this is that the notice should contain a statement of the amount claimed for materials furnished for improvement of the identical property upon which the lien is claimed and a description of that property upon which such lien is claimed. The failure to comply with the statute is that the lien claimant did not in his notice of lien state the amount due him for materials furnished for the construction on lot 8. If he had stated such amount then to maintain his claim it would have been necessary for him to show the value of the material which he furnished for the improvement on lot 8 and he could not show this by showing what he furnished for improvements on lot 7 and on lot 8 and then make an estimate of the amount furnished for lot 8. When the claimant released lot 7 from the operation of the lien it effectually estopped itself from enforcing its lien against lot 8 *as against other lien holders* and *purchasers* and *creditors.*" (Italics supplied.)

The Florida mechanics lien statute, Comp. Gen. Laws 1927, section 5380, was, at the time of the above decision, very much like the Virginia statute, Code 1936, section 6426, which, in part, is as follows:

"All persons performing labor or furnishing materials, of the value of ten dollars or more, for the construction, removal, repair, or improvement of any building or structure permanently annexed to the freehold, * * * shall have a lien, if perfected as hereinafter provided, upon such building or structure, etc."

In the case of *Withrow Lumber Company* v. *Glasgow Inv. Co.* (1900), 101 F. 863, 866, Judge Waddill, of the United States Court for the Western District of Virginia, construing the Virginia statute involving a single lien for a number of buildings, said:

"It cannot be seriously contended that the face of the account shows that the work charged for was done as an entirety under a contract for a specified amount. * * * The reason for requiring a particularization of the account is manifest, as it affects the *rights of innocent persons,* and the imposition upon the claimant of the lien is reasonable, as it makes him furnish information peculiarly within his own possession."

And the Court continued:

"It is not the contract for erecting the building which creates the lien but it is the use of the materials furnished * * * and expended by the contractor * * * which gives the materialman his lien under the statute."

See also, *Richards Brick Co.* v. *Trott,* 23 App. D. C. 284.

In the case of *Little Brothers Mill Co.* v. *Baker,* 57 Wash. 311, 106 P. 910, 135 Am. St. Rep. 980, the syllabus is as follows:

"Mechanics Lien—Materials Commingled—One who furnishes lumber which is used in the construction of two houses, and so commingled that it is impossible to determine what particular part enters into the construction of each building, is not entitled to a lien on one of the buildings for such lumber."

In *Morris County Bank* v. *Rockaway Mfg. Co.,* 16 N. J. Eq. 150, in which a single lien was filed upon a number of lots, but there was no apportionment of the claim as to each property, this was said:

"I do not see upon what principle the claim can be sustained, if any regard be had to the letter, spirit or policy of the act, to the rights of the landowner, or to the just claim of other encumbrancers.

    \*      \*      \*      \*      \*      \*      \*

"The policy of the law rests upon the same idea, viz: to recompense the mechanic or materialman the value of the work done, or materials furnished, in the construction of the building whose value he has contributed to increase.

    \*      \*      \*      \*      \*      \*      \*

"It appears to me that the insuperable objection to permitting a lien for materials furnished for several buildings to be included in one claim, with no specification of the amount furnished for each, is, that it enables the lienholder to shift the encumbrance at his pleasure, and to place the bulk of the claim upon any building, to an amount far exceeding the value contributed to such building, in contravention of the plain terms and manifest policy of the statute, and in derogation of the rights of other parties. If the property all continued in the hands of the same owner, the practical effect of such practice, though it might prove embarrassing, might not be either unjust or oppressive. But when it is borne in mind that in most cases, as in the present, where there is a contest for priority of encumbrances, the original owner is insolvent or not interested in the result, and that the contest is between the lienholders themselves, or between them and equally meritorious classes of creditors, it is difficult to see how the practice can be permitted, consistently with law or with justice."

In the case in judgment, it was averred that the contest was one of priority of encumbrances and it appears that the owner was insolvent.

The case of *Larkins* v. *Blakeman*, 42 Conn. 292, 293, 294, from the Supreme Court of Errors of the State of Connecticut, presents a decision which is pertinent here, we think, and we quote therefrom:

"The value of the materials furnished for each house does not appear. The aggregate value of the materials for the two houses is stated, a single lien is claimed covering both houses and the lots on which they stand, and one certificate only is filed. The record therefore does not show, and it is impossible now to ascertain, the amount furnished for each house. This is a fatal objection. The statute gives a lien upon each building and lot for materials furnished in the construction and erection of that building only; and the certificate must state the amount so furnished as nearly as the same can be ascertained. This certificate states the aggregate amount for the two, but gives no information as to the amount furnished for each. This is not a compliance with the statute. It requires no argument to show that if the statute is not complied with the lien cannot be maintained. If any is needed it is readily found in the circumstances of this case. A large proportion of the amount, nearly the whole perhaps, may have been expended on one house; and yet the other is made to bear one-half the burden. The injustice of this is more apparent when we consider that the two houses have been sold to different parties."

In *Badger Lumber Co.* v. *Holmes,* 44 Neb. 244, 62 N. W. 446, 447, 48 Am. St. Rep. 726, 728, we note the following:

"Here the contract was to furnish material to erect six buildings upon six lots, the material was so furnished, and it was used indiscriminately in building each of the six buildings. The whole debt then might be charged to all six of the lots: *Wakefield* v. *Latey,* 39 Neb. 285, 57 N. W. 1002. But all the debt for all the material cannot be charged to a part of the lots. If it is sought to charge a part only of the lots for materials furnished under the contract, then the amount of the material furnished must be apportioned so that the parts charged shall bear no greater amount of the expense than the value of the material actually used on said parts in the construction of the improvements made thereon."

In Corpus Juris, vol. 40, page 278, part of section 346, we find the following:

"While there is some authority to the contrary, it is generally held that a lien for the entire amount due for work done on, or materials furnished for, several buildings or lots cannot attach to, or be enforced against, part of the buildings or lots, and that, where it is sought to enforce the lien on less than the whole number of buildings or lots, each building is subject to the lien only to the extent of what was done or furnished therefor, and each lot only to the extent of what was done or furnished for the building or improvement thereon. The lien is properly confined to the building upon which the work was done, although the original contract embraced other buildings."

It might be urged that the text quoted above specifies that a lien for "the entire amount due" cannot attach to, or be enforced against, part of the buildings or lots, and that in the case in hand it is only a part of the amount due, or the balance of the amount due, that is urged as a lien against part of the buildings or lots. We are unable to perceive that this makes any material difference. There is no attempt to even approximate the value of the materials that were used in the construction of any particular house or houses on the lots. How, then, can the lienor release certain houses from the burden of his lien and then say, with any degree of accurateness, that the balance due him is a lien on those houses which he has not released? He admits that the materials were commingled and that it is impossible for him to say what materials went into one or another. He is in the dark. How, then, can it be said that the interests of innocent third persons—lien creditors—may not be jeopardized or impaired?

" * * * A release of the lien as to part of the property covered thereby does not destroy the lien on the rest of the property; but where one building is released, an item for work or materials therein cannot be included in a lien on the remaining buildings. * * * " Corpus Juris, vol. 40, page 341, part of section 458.

"Where a contractor who, under one general contract with the owner had constructed, upon contiguous lots, two

separate buildings, each requiring the same amount and character of labor and material, after having been paid more than half the contract price, released one of the houses and lots from his lien, under an agreement with the owner that he should retain a lien on the other for the balance due on his contract, he could file and enforce his lien on the remaining house and lot for the entire balance due him where there were no third persons whose interests were prejudically affected by the release." Corpus Juris, idem, note 95. See also, *Reilly* v. *Williams,* 47 Minn. 590, 50 N. W. 826.

It will be observed that the condition by which the validity of the lien is determined, is that there were no third persons whose interests were injuriously affected by the release. Such condition obtains and is present in the case under consideration and, therefore, the liens urged are without validity against the houses and lots sought to be impressed therewith.

We have been unable to find any Virginia case decisive of the precise question here but by inescapable inference the case of *Sergeant* v. *Denby,* 87 Va. 206, 12 S. E. 402, supports the position we take. It limits the effect of its holding to a case "as between the general contractors and the owner." The inference is that the holding would have been different had the interests of third persons been present.

Our judgment is that the trial court was right in sustaining the demurrers. We so decide and affirm the decrees.

*Affirmed.*