486 P.2d 222

Robert D. GREENE, Appellant,

v.

Fred Q. REED and Dorris Reed, his wife, individually and doing business as Reed Bail Bond, Appellees.

No. 1 CA–CIV 1539.

Court of Appeals of Arizona, Division 1.

June 21, 1971.

Brazlin & Greene, Ltd., by Paul Tutnick, Phoenix, for appellant.

James E. Flynn, Phoenix, for appellees.

HATHAWAY, Judge.

Appellant, plaintiff below, sued appellees, defendants below, for the sum of $5,000 allegedly owing to him by virtue of an assignment of a $5,000 security deposit which had been posted for a bail bond written by the bonding company. (The parties hereinafter shall be referred to as they appeared below.) The case was tried to the court, sitting without a jury, and resulted in a judgment in favor of the defendants from which this appeal was taken.

The plaintiff introduced into evidence the following document:

## ASSIGNMENT OF FUNDS

April 28, 1968

In consideration of past legal services, and amounts owed therefor, I hereby as-

sign and transfer unto Robert D. Greene the Five Thousand Dollars ($5,000.00) that I posted with Reed Bail Bond, 150 W. Washington St., Phoenix, Arizona on April 7, 1968. Said Five Thousand Dollars ($5,000.00) was deposited in Trust with Reed Bail Bond for the Federal Bond that Reed posted in Tucson, Arizona for Mr. Willoughby. This Assignment is ir-revocable with out the written approval of Robert D. Greene.

s/ Larry Fassler

The above assignment is hereby accepted This 2 day of *May*, 1968.

Reed Bail Bond
By s/ Fred Q. Reed

Subject to Exoneration of
$10,000 Bond Posted in behalf
of Willoughby in Federal Court
of Tucson [hand-written]

s/ Fred Q. Reed
s/ Robert D. Greene

The plaintiff also proved that on January 6, 1969, the Willoughby bond had been exonerated and that on February 10, 1969, he had made formal written demand · for payment of the $5,000.

The defendants admitted receipt of notice of the assignment, their acceptance of it subject to the exoneration of the Willoughby bond, and that the bond had been exonerated. Their defense to the plaintiff's claim was that there was no consideration given to the assignor for the assignment; that on December 20, 1968, they had posted a $5,000 bond for one Oldright at the request of the assignor which was forfeited on January 30, 1969, and in accordance with the assignor's instructions, the $5,000 from the Willoughby bond had been used in payment of the forfeiture of the Oldright bond; and that the plaintiff had no title or interest in the $5,000 since the assignment was executed by the assignor solely to facilitate the handling of the money for the purpose of posting bonds.

At the conclusion of the trial, the trial court made extensive findings of fact and concluded that the defendants were entitled to judgment as a matter of law. It found,

inter alia, that at the time of the execution of the assignment, no consideration passed from the plaintiff to the assignor, that the assignor's purpose in executing the assignment was to transfer the ownership of the money in order to protect it against a tax line because the assignor did not want the money to be subject to a tax lien against him, that at the time the assignor executed the assignment, he did not intend to transfer the complete ownership of the money to the plaintiff but was only putting it in the plaintiff's name to protect it against a developing tax lien, and that by reason of the fact that the assignment was executed by the assignor to protect the money against a tax lien, it was against public policy, void and of no legal force or effect whatsoever. After judgment was entered, the defendants filed a motion to amend that pleading to conform to the evidence by the addition of a paragraph asserting that the assignment was executed to protect the $5,000 against a tax lien, and was an attempted fraudulent conveyance of the funds, contrary to public policy and therefore void. This motion, over plaintiff's objection, was granted. The plaintiff, in his opposition to the motion, argued (1) that the evidence did not support the proposed amendment and (2) that even if such issue was tried, it was tried without the plaintiff's consent.

On appeal, the plaintiff contends that the defendants were precluded from raising questions as to the consideration for and the legality of the assignments and that parol evidence was improperly admitted as to the nature of the transaction. He further attacks the trial court's allowance of the post-trial amendment of the pleadings.

We agree with plaintiff that when notice of an assignment is given to and received by the debtor, he then becomes liable to pay the assignee whether he accepts the assignment or not. General Factors, Inc. v. Beck, 99 Ariz. 337, 409 P.2d 40 (1965); Bank of Yuma v. Arrow Construction Co., 106 Ariz. 582, 480 P.2d 338 (1971); Van Waters & Rogers, Inc. v. Interchange

Resources, Inc., 14 Ariz.App. 414, 484 P.2d 26 (1971). However, the courts of this state, as a matter of public policy, will not enforce illegal contracts where both parties are equally at fault. Graham v. Shooke, Ariz., 482 P.2d 446 (1971); Brand v. Elledge, 89 Ariz. 200, 360 P.2d 213 (1961).

A debtor may assert against an assignee all equities or defenses existing against the assignor prior to notice of the assignment and any matters rendering the assignment absolutely invalid or ineffective. 6 C.J.S. Assignments § 132 (1937). As a general rule the question of want of consideration is not available as between the assignee and the debtor. Zurich Insurance Co. v. Grain Dealers Mutual Ins. Co., 169 So.2d 6 (La.App.1964); 4 A. Corbin, Contracts § 909 (1951); 6 Am.Jur.2d Assignments § 90 (1963). However, the issue of consideration may properly be raised when the validity of the assignment is challenged. Harvey v. Whyte, 158 Cal.App.2d 685, 323 P.2d 162 (1958).

The defendants, both in the trial court and on appeal, took the position that the written assignment had no legal efficacy and was a mere sham. The trial court permitted them to introduce extrinsic evidence to show that the assignment was different from what it purported to be on its face. As between a third party and one of the parties to the contract, parol evidence is properly admitted for this purpose. Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935). See also Arizona Cotton Ginning Co. v. Nichols, 9 Ariz.App. 493, 454 P.2d 163 (1969); Annot., 71 A.L.R.2d 382 § 3 (1960).

We have reviewed the evidence in a light most favorable to support the trial court's findings and have concluded that the requisite evidentiary support is disclosed by the record. The assignor, Larry Fassler, testified that he gave a blanket assignment to protect the funds. He explained:

"The reason for the assignment was that I was in Mexico. My status in this country was precarious and I wanted that money protected if something happened to me. I didn't want anything to happen

to that money. I had enough trust in Mr. Greene so I was willing to put the money totally into his hands as his own feeling confident he would do what was right with the money."

And:

"Q So if at any time you wanted to use it or you wanted it back you could get it, is that right, Fassler?

A Yes. I felt confident that he would return any part of it I would ask for.

Q So then even though it was actually transferred by the assignment to Mr. Greene, actually the ownership of the $5,000 remained in you, is that right?

A No. No, the intent was to put the ownership in Bob in order to take—the whole idea was to get the ownership away from me so that ownership of that money would be protected—that— well for instance there is a tax lien on me now. At the time I was concerned of one coming. It's quite extensive. I did not want ownership of that money in case of a tax lien as did develop because I would not want that money to be subject to that tax lien. That was the reason for transferring ownership of the money.

Q Just to get it out of your name?

A Yes. To get it—just to entirely give up the ownership, just to protect the money, yes."

Fassler, when questioned as to whether he had had any discussion with the plaintiff about releasing the $5,000 so that Reed could use it for the Oldright bond, responded:

"Yes. I told Mr. Greene some time after the bonds were posted that I had done, you know, that Fred Reed had posted the Oldright bond and I told Bob to do whatever was necessary if Fred asked him to do it.

Q In other words, in connection with the assignment?

A Yes."

The plaintiff testified as follows concerning his discussion with Fassler about the preparation of the written assignment:

"Mr. Fassler instructed me to prepare the assignment into my name and asked that I prepare it to the effect that no one could get on to the money or latch on to the money or in any way interfere with my right to the money."

We believe that the foregoing testimony, which the trial court apparently believed, coupled with the fact that the consideration moving to the assignor was either nil or grossly inadequate, supported a finding that the parties to the assignment intended it merely as a device to avoid payment of taxes. In the case of Sheldon v. Pruessner, 52 Kan. 579, 35 P. 201 (1894), the Supreme Court of Kansas set aside a judgment of foreclosure in favor of the assignee of a note and mortgage where the assignor testified that the transfer was made "to get rid of paying taxes." The court stated:

"Whatever tends to obstruct duty by defeating the letter or spirit of the law is also unlawful; and the courts will not enforce any agreement or contract for the benefit of one through whose direction or assistance the law is violated, or public policy contravened. The law attempts to close the doors to temptations by refusing such parties recognition in the courts [citation omitted] 'No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If, from the plaintiff's own stating or otherwise, the cause of action appears to rise ex turpi causa, or the transgression of a positive law of this country, there the court says he has no right to be assisted. It is upon that ground the court goes; not for the sake of the defendant, but because it will not lend its aid to such a plaintiff.' [citations omitted]. * * * [I]f Henry [assignor] transferred the note and mortgage to evade the paying of taxes on his interest therein, he cannot be permitted, through Simon Pruessner, [assignee] to recover

any part of the note and mortgage for his own benefit." 35 P. at 203.

Since the evidence disclosed that the plaintiff assisted Fassler in his attempt to circumvent the revenue laws, the trial court for this reason alone, was justified in denying relief to the plaintiff. Furthermore, there was sufficient evidence to support a finding that the written assignment was not intended by the parties to be an absolute conveyance of all the assignor's right, title and interest in the $5,000 but was merely intended as a device to implement the use of the funds as security for bail bonds.

We find no merit in plaintiff's complaint with respect to the amendment of the pleadings. No objection was made to Fassler's testimony as to the transfer of the $5,000 to avoid a threatened tax lien. Consequently, the issue of legality was tried with implied consent. In re Estate of McCauley, 101 Ariz. 8, 415 P.2d 431 (1966).

Judgment affirmed.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.