[No. 1263-1. Division One—Panel 1. May 14, 1973.]

ASSOCIATED SAND & GRAVEL CO., INC., *Appellant,* v. DOM DI PIETRO *et al., Defendants,* PEOPLES MORTGAGE COMPANY, *Respondent.*

H. D. FOWLER COMPANY, INC., *Appellant,* v. DOM DI PIETRO *et al., Defendants,* ASSOCIATED SAND & GRAVEL CO., INC., *Appellant,* PEOPLES MORTGAGE COMPANY, *Respondent.*

PEOPLES MORTGAGE COMPANY, *Respondent,* v. VISTA VIEW BUILDERS *et al., Defendants,* ASSOCIATED SAND & GRAVEL, INC., *et al., Appellants.*

*Reed, McClure, Moceri & Thonn, P.S., Richard C. Reed, William R. Hickman, Anderson, Hunter, Carlson & Dewell,* and *Julian C. Dewell,* for appellants.

*Macbride, Sax & MacIver* and *John L. Patterson,* for respondent.

HOROWITZ, J.—This appeal embraces the question whether

a single mechanic's lien against more than one lot of land in a subdivision can be enforced against less than the entire property liened, over the objection of a lienor junior to the lien creditor on the lot on which lien enforcement is sought and senior to the lien creditor on other lots in the subdivision liened against, when the owner is bankrupt and the subdivision lots are insufficient to fully pay off both the lien creditor and the junior lien creditor referred to.

The facts are these. Vista View Builders, Inc., a subdivision owner and developer, constructed a residential development containing 71 lots known as Twin Creeks in King County, Washington. Peoples Mortgage Company provided the original financing, secured by deed of trust on all 71 lots. In 1969, Peoples advanced additional funds to Vista View for construction loan purposes on 26 of the subdivision lots. The procedure used was this: When Vista View was ready to build a house, it received a construction loan from Peoples secured by deed of trust on the lot to be built upon. After each deed of trust was recorded, the lot was released from the original deed of trust by the execution and recording of a partial reconveyance. The procedure operated to reduce Peoples' first lien position on the lots released to a second lien position and thereby enabled materialmen to acquire a first lien position on those lots for work and labor performed, the benefit of which was received by those lots.

Associated Sand & Gravel Co., Inc. commenced work on the subdivision on May 20, 1969, for which it filed a blanket or unapportioned lien claim of $11,257.11 against 62 subdivision lots. H. D. Fowler Co., Inc. commenced work on the subdivision on August 26, 1969, for which it too filed a blanket or unapportioned lien claim of $9,150.09 against all 71 lots. The labor or materials supplied went into road and sewer construction work for the benefit of the subdivision. Neither Associated, Fowler, nor Peoples took any security from Vista View additional to that described, nor did any of these three secured subdivision creditors obtain lien

waivers to preserve or create a first lien position on the subdivision lots in which they had junior liens. Vista View became bankrupt.

Associated, Fowler and Peoples each commenced separate suits, later consolidated, to foreclose their respective liens and trust deeds. At the time of trial, the liens of Associated were senior to that of Peoples on 17 lots, and that of Fowler senior on 20 lots. Peoples' trust deeds were senior to the liens of Associated and Fowler on the remainder of the 71 subdivision lots. The lots on which Associated and Fowler had a senior position were part of the 26 lots on which Peoples had voluntarily acquired a secondary position in the manner above described.

The court entered findings, conclusions and decree recognizing the validity of the mechanics' liens filed by Associated and Fowler, and the validity of Peoples' trust deeds, and entered judgment in their favor against Vista View in the following amounts: Associated for $14,257.11; Fowler for $11,050.09; and Peoples for $539,081.87—in each case plus interest and costs. However, the decree, in conformity with the conclusions, embodied a requirement that each mechanic's lien claimant should apportion the amount of his blanket lien equally over the lots liened against. Fowler therefore assigned 1/71st of its judgment to each lot, or, as computed by appellants, $179.45 per lot. Associated apportioned its lots on the basis of 1/62nd of its judgment to each lot, or, again as computed by appellants, $244.55. On the lots on which Peoples held individual trust deeds and on which its lien claims were junior to those of Associated and Fowler or both, the amount secured by the trust deeds ranged from $8,093.73 to $17,400. Peoples held a senior trust deed security position vis-a-vis Associated and Fowler on all remaining subdivision lots. Associated and Fowler appeal, contending the apportionment requirement to be erroneous.

At the outset, it is necessary to determine the nature of the prejudice of which appellants complain and the nature of the prejudice of which Peoples complains should appor-

tionment not be required. The findings are silent on the matter of prejudice as to the parties. However, Associated and Fowler pointed out below that, as a result of the apportionment, the most that they could recover on execution sale of the lots on which they had a senior position was approximately one-third of their total lien foreclosure judgments.[1] Because of Peoples' junior position on the lots proposed to be executed against, Peoples had an economic incentive to bid on those lots to protect its junior position. If, however, apportionment had not been required, Peoples, to protect its junior position, would have been required to pay the whole of Associated's and Fowler's judgments rather than the reduced amounts resulting from the apportionment requirement.

■ There is no express finding that the subdivision lots were insufficient to pay off Peoples' judgment indebtedness in full. However, there appears to be no serious question concerning the insufficiency. Associated and Fowler, in their supplemental brief, state that at the time of the decree "Large chunks of development land were a glut on the market. . . . [N]o one was selling because no one was buying." And again, "it was clear that the property could not be sold for the amount owed . . ." No good purpose would be served to remand this case for an express finding when both parties apparently presented this case below and on appeal on the assumption that the subdivision property was insufficient to pay off Peoples in full. *See Herron Northwest, Inc. v. Danskin,* 78 Wn.2d 500, 476 P.2d 702 (1970); *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965); *Stratton v. U.S. Bulk Carriers, Inc.,* 3 Wn. App. 790, 478 P.2d 253 (1970).

Peoples has not cross-appealed and does not challenge the validity of Associated's and Fowler's blanket liens; nor do the mechanic lien claimants challenge the validity of Peoples' trust deeds. Associated and Fowler contend that

---

[1] Lien claimants had the burden of proving the correct amount to be allocated to each lot liened against. *Westinghouse Elec. Supply Co. v. Hawthorne,* 21 Wn.2d 74, 150 P.2d 55 (1944).

they have a right to collect their blanket liens against only part of the lots even though the effect may be to free other lots liened against from the necessity of sale. Peoples argues that when a third party is adversely affected by collecting the whole of a blanket lien out of only part of the land liened against, the adversely affected third party may complain. In 10 G. Thompson, *Real Property* § 5212, at 366 (Grimes repl. ed. 1957), it is stated:

> The general rule is that a single mechanic's lien against more than one lot or parcel of land cannot be enforced against less than the entire property liened, without first showing what part of the entire lien may properly be allocated to the lot or tract against which enforcement is sought.

To the same effect, *see* 57 C.J.S. *Mechanics' Liens* § 189 (1948). Illustrative support for the rule stated is found in cases such as *Weaver v. Harland Corp.,* 176 Va. 224, 10 S.E.2d 547, 130 A.L.R. 417 (1940); *Sebastian Bldg. & Loan Ass'n v. Minten,* 181 Ark. 700, 27 S.W.2d 1011 (1930); *Hendrickson v. Bertelson,* 1 Cal. 2d 430, 35 P.2d 318 (1934); 2 L. Jones, *Liens* §§ 1317, 1319 (3d ed. 1914); Annot., 130 A.L.R. 423, 428 (1941).

In *Weaver,* an instructive case, various lien claimants forclosed their liens after the owner-developer went into receivership. Each materialman had a contract with the owner to furnish labor or materials for 20 houses being constructed on 20 lots. Each filed one lien against a certain number of lots, twelve in one case and eight in the others, after receiving payments toward the contract price and agreeing not to file liens against the remaining lots. The lien claim filed, therefore, covered some labor and materials furnished to lots excluded from the lien. The court required lien apportionment to reflect the amount of labor and material furnished to particular lots, stating:

> [W]e think, the weight of authority and the force of reason sustain the view that the release of a portion of the properties, under the circumstances of this case, embraced by the lien, precludes its successful assertion

against the remainder. *This is only true where the interests of other lien creditors are affected. It would not be so in the case of the owner and the lienor. It will be readily seen that if it were not so the mechanics lien lienors could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity.*

(Italics ours.) 176 Va. at 227.

 The power of a court of equity to require apportionment to protect third-party rights in the inherent exercise of its jurisdiction to do equity is clear. *Hendrickson v. Bertelson, supra.* The parties agree that the burden is upon Peoples to demonstrate that in equity and good conscience apportionment should be required. *See Washington Asphalt Co. v. Boyd,* 63 Wn.2d 690, 388 P.2d 965 (1964). Peoples has demonstrated that it has not forfeited its right to equitable consideration and that, unless Associated and Fowler are required to apportion their liens, Peoples, as a practical matter, will be called upon to pay for work and labor performed on lots other than those executed against.

Associated and Fowler then contend that Peoples has forfeited its right to the benefits of apportionment when, in connection with its advance of construction loan funds to Vista View, it voluntarily relinquished its first lien position on the lots on which Associated and Fowler now have the first lien position and took a secondary lien position. They then argue that Peoples has itself to blame for the predicament in which it now finds itself; that Peoples should have protected itself against loss by taking additional security from Vista View or by arranging for lien waivers so that Peoples could continue to have a first lien position. We find nothing in the conduct described that requires a court of equity to forfeit Peoples' right to equitable consideration. Peoples, like Associated and Fowler, assumed—it now appears erroneously—that it would be paid in full so that additional security and lien waivers were not required.

Each party was proceeding in the usual and normal way in which land development business is conducted. No party was guilty of inequitable conduct.

The trial court, passing on the contentions of the parties, had a right to conclude that it would have been inequitable for Peoples, in practical effect, to be compelled to pay to Associated or Fowler for labor and material on lots liened against other than those sold on execution. We cannot find that the court abused its discretion in applying the doctrine of apportionment to prevent this inequitable result.

The judgment is affirmed.

SWANSON, C.J., and FARRIS, J., concur.

Petition for rehearing denied July 17, 1973.

Review denied by Supreme Court August 28, 1973.