852 P.2d 1239

**C S & W CONTRACTORS, INC.,
an Arizona corporation,
Plaintiff/Appellee,**

v.

**SOUTHWEST SAVINGS & LOAN ASSOCIATION, an Arizona corporation, Defendant/Appellant.**

**No. 2 CA–CV 92–0163.**

Court of Appeals of Arizona,
Division 2, Department B.

Nov. 10, 1992.

Review Granted on issue A and
Denied on all other issues
June 15, 1993.*

---

\* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determi-

nation of this matter.

57

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Brian M. Mueller, Phoenix, for plaintiff/appellee.

Jackson, White & Gardner, P.C. by Eric M. Jackson and Michael R. Pruitt, Mesa, for defendant/appellant.

## OPINION

FERNANDEZ, Judge.

Appellant Southwest Savings & Loan Association appeals from a judgment foreclosing a mechanic's lien in favor of appellee CS & W Contractors, Inc. Southwest contends that CS & W waived the lien, that it filed its foreclosure action untimely, that the lien must be apportioned, and that the trial court improperly awarded CS & W prejudgment interest. We affirm.

In June 1986, Southwest agreed to lend Sencorp, Inc. $1,630,000 for the purchase and development of a subdivision in Phoenix. The loan was secured by a deed of trust (Deed of Trust I). In July 1986, CS & W contracted with Sencorp to construct streets, curbs, gutters, sewers, and water lines in the subdivision. CS & W began work in August and completed it in February 1987. In November 1986, Southwest agreed to lend Sencorp an additional $565,500, secured by a deed of trust (Deed of Trust II) on lots 39, 40, 41, and 42 of the subdivision. In May 1987, Southwest recorded a deed of release and reconveyance, which released those four lots from Deed of Trust I. CS & W recorded a lien against the property on May 20, 1987, alleging that Sencorp owed it $93,724.45.

Sencorp filed for bankruptcy protection in September 1987. In November, Southwest filed a motion for relief from the automatic stay, which was granted in December. Southwest recorded a notice of trustee sale in January 1988 for Deed of Trust II and sent a copy to CS & W's attorney, who did not in turn send it to CS & W. In February, Southwest recorded a notice of sale for Deed of Trust I but sent no notice to CS & W. A trustee's sale for Deed of Trust II was held in April 1988, and the sale for Deed of Trust I was held in May. Southwest was the successful bidder at both sales, and trustee's deeds for both properties were subsequently issued to it.

CS & W sued Southwest on August 17, 1988 and recorded a lis pendens on the property. In September, CS & W requested relief from the bankruptcy stay, which was granted January 10, 1989. It filed a first amended complaint January 17, adding Sencorp as a defendant. After it was given notice of a second trustee's sale under Deed of Trust I, CS & W amended its complaint, adding a declaratory relief count to determine the effect of a second sale on its lien.

After a bench trial, the court ruled that CS & W's lien is valid, that the lien was timely filed, that the second sale would have no effect upon the lien, and that CS & W is entitled to prejudgment interest.

### VALIDITY OF LIEN

■ Southwest contends that the court erred in holding that the lien was valid, arguing that CS & W waived it. CS & W argues that Southwest improperly raised the issue, noting that in its responses to CS & W's requests for admissions, Southwest admitted that "[t]o the extent that C.S. & W. has not caused a satisfaction of release to be recorded, the lien has not been released." Because that was a qualified admission and because, in their joint pretrial statement, the parties agreed that one of the contested issues was whether CS & W had released all or a portion of the lien, we conclude that the issue was properly raised.

■ Southwest introduced into evidence three forms, entitled "Receipt in Partial and Waiver of Lien" and signed by CS & W's president. The forms provide in part as follows:

And the undersigned, for and in consideration of the sum aforesaid, and other good and valuable consideration, does hereby waive and relinquish all right, which he can or may have at this date, or any future date, to file any lien, mechanics', materialmens' [sic] or otherwise, against said above property for or by reason of any work performed, or to be performed, or material furnished, or to be furnished, in connection with the original construction of said project....

Southwest argues that the language clearly released all liens on the property, warranting judgment in its favor. We disagree.

We note initially that both the title and language in the text of the waivers refer to a "receipt in partial" of sums due for the work. Each of the forms, which are dated October 3, 1986, November 25, 1986, and December 12, 1986, also acknowledged receipt of a different sum of money. The contract between CS & W and Sencorp provided for payment on a monthly basis, thus clearly contemplating partial payments, and CS & W's president testified that Sencorp requested him to sign partial waivers each time it made a payment.

In addition, over Southwest's objection, CS & W's president testified that his intent in signing the forms was "[t]o generate a partial waiver of lien for the amount of payment," that he had no discussion with Sencorp that the waivers were to be construed as full and final lien releases, and that the custom and practice in the industry was to sign partial waivers of liens when periodic payments were made.

■ Southwest contends that the court improperly permitted CS & W to introduce evidence of the parties' intent in executing the forms. We disagree. In *Collins v. Collins*, 46 Ariz. 485, 499, 52 P.2d 1169, 1174 (1935), our supreme court noted that "it is almost universally held that as between a third party and one of the parties to the contract it may always be proven by parol evidence that a contract between them is different from what it purports to be on its face." *See also Adams v. Dion*, 109 Ariz. 308, 509 P.2d 201 (1973) and *Greene v. Reed*, 15 Ariz.App. 110, 486 P.2d 222 (1971).

Southwest argues that the principle does not apply here because a mechanic's lien was not at issue in any of those cases. We find no merit to that argument. Southwest has cited no authority for its contention that the principle stated in *Collins* is inapplicable to mechanic's lien cases, and we see no reason to treat such cases differently.

■ Nor do we find persuasive Southwest's reliance on *Amfac Distribution Corp. v. J.B. Contractors, Inc.*, 146 Ariz. 19, 703 P.2d 566 (App.1985). In that case, a company that had supplied materials to a subcontractor sued the general contractor for work performed but not billed prior to the dates shown on the waivers. The supplier was not able to preclude entry of summary judgment in favor of the general contractor by its claim that it intended to waive its lien only as to amounts billed. There, however, the supplier knew that the general contractor would not pay the subcontractor until it had a waiver of lien from both the subcontractor and the supplier. Thus, the general contractor was a party to the waiver and had a right to rely on it when making payments.

■ Estoppel was also the basis for the cases cited by both Southwest and the court in *Amfac: Mountain Stone Co. v. H.W. Hammond Co.*, 39 Colo.App. 58, 564 P.2d 958 (1977); *Country Service & Supply Co. v. Harris Trust & Savings Bank*, 103 Ill.App.3d 161, 58 Ill.Dec. 599, 430 N.E.2d 631 (1981); *Crane Co. of Minnesota v. Advance Plumbing & Heating Co.*, 177 Minn. 132, 224 N.W. 847 (1929); *Holbrook v. Webster's, Inc.*, 7 Utah 2d 148, 320 P.2d 661 (1958). Each of those cases involved fact situations similar to that in *Amfac*. No estoppel issue exists here because Southwest produced no evidence that it ever made payments in reliance on the waivers. We conclude, therefore, that the court correctly permitted CS & W to introduce evidence of the parties' intent with respect to the partial lien waivers.

■ Southwest also contends that the court erred in allowing CS & W's president to testify about the custom and practice in the construction industry regarding partial lien releases, arguing that CS & W had not listed him as an expert on that issue. We find no merit to that argument in light of the fact that the president was disclosed as a witness ten months before trial and Southwest did not raise the lien waivers issue until two weeks before trial. We note, in addition, that the testimony was not presented until redirect examination af-

ter Southwest raised the issue on cross-examination. Finally, we find no merit to Southwest's contention that the president was not qualified to testify about the customs and practices in the industry. He testified that he had thirty-one years' experience in the construction industry, including eight years as president of CS & W. He also testified about his extensive involvement in all aspects of CS & W's construction contracts, including the one with Sencorp. Therefore, we agree with the trial court that CS & W did not waive its lien.

## TIMELINESS OF FORECLOSURE ACTION

■ Southwest also contends that CS & W failed to preserve its lien, arguing that its foreclosure action was filed untimely. CS & W completed its work under the contract in February 1987 and timely recorded its lien on May 20, 1987. A.R.S. § 33–993. It did not, however, file its complaint until August 17, 1988, well after the statutory six-month period. A.R.S. § 33–998.

Because Sencorp filed for bankruptcy protection on September 17, 1987, Southwest acknowledges that CS & W's obligation to file suit to foreclose the lien was tolled pursuant to the automatic stay provisions of the bankruptcy code. 11 U.S.C. § 362; *In re Hunters Run Limited Partnership*, 875 F.2d 1425 (9th Cir.1989). Southwest contends, however, that CS & W was required to file suit within thirty days of the date the trustee's sale was held, citing 11 U.S.C. § 362(c)(1). That section provides: "Except as provided in subsections (d), (e), and (f) of this section—(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate...." Subsection (d) provides that a creditor may seek relief from the automatic stay under certain conditions. Those conditions were the basis for Southwest's motion for relief from the stay. Therefore, 11 U.S.C. § 362(c)(1) is not applicable.

Southwest acknowledges that it sent CS & W no notice of its motion for relief from the stay and that CS & W received no notice of the order lifting the stay. In addition, 11 U.S.C. § 108 provides that suit must be filed within thirty days of the date a stay is lifted "with respect to such claim." The order lifted the stay as to Southwest only; it makes no mention of CS & W. The Nevada Supreme Court has noted, "When a stay is lifted by the bankruptcy court, it is lifted only as to the moving party." *Depner Architects and Planners, Inc. v. Nevada National Bank*, 104 Nev. 560, 563, 763 P.2d 1141, 1142 (1988).

■ The applicable trustee's sale on this issue was that held pursuant to Deed of Trust I, the one to which CS & W's lien was junior. Southwest admits it gave CS & W no notice of that sale. CS & W did not discover that Southwest had conducted the sale until mid-July 1988, and it filed suit August 17. Because it promptly filed suit once it learned of the sale, we agree with the trial court that CS & W's foreclosure action was timely filed.

## NOTICE OF TRUSTEE'S SALES

■ Southwest next argues that, although it never gave CS & W notice of the trustee's sale under Deed of Trust I as required by A.R.S. § 33–809(B), CS & W had constructive or inquiry notice so that its lien was extinguished following the sale. The inquiry notice was purportedly the result of CS & W's knowledge that Southwest had made a construction loan to Sencorp secured by an interest in the property, its knowledge that Sencorp had filed for bankruptcy protection, and the notice of trustee's sale under Deed of Trust II.

The only Arizona authorities Southwest cites in support of its proposition that inquiry notice satisfies the actual notice requirement of the statute are *In re Bisbee*, 157 Ariz. 31, 754 P.2d 1135 (1988) and *Watson Construction Co. v. Amfac Mortgage Corp.*, 124 Ariz. 570, 606 P.2d 421 (App. 1979). Neither of those cases involved a notice of trustee's sale but dealt instead with the constructive notice that is provid-

ed by recording statutes. It is clear under Arizona law, however, that strict compliance with the statutory notice requirements is necessary for a trustee's sale to be valid. *Patton v. First Federal Savings & Loan Association,* 118 Ariz. 473, 578 P.2d 152 (1978); *Maciborski v. Chase Service Corp.,* 161 Ariz. 557, 779 P.2d 1296 (App.1989); *LeDesma v. Pioneer National Title Insurance Co.,* 129 Ariz. 171, 629 P.2d 1007 (App.1981). We find no merit to Southwest's contention that constructive or inquiry notice is sufficient to provide the actual notice required for a trustee's sale, particularly when CS & W, in fact, had no notice of the sale at all.

■ Southwest also contends that the sale under Deed of Trust I served to defeat CS & W's lien, arguing that because Southwest was a purchaser for value without notice in accordance with A.R.S. § 33–811, the trustee's deed is conclusive evidence that the statutory notice requirements were met. *Main I Limited Partnership v. Venture Capital Construction & Development Corp.,* 154 Ariz. 256, 741 P.2d 1234 (App.1987). We reject that argument. Because the evidence showed that CS & W sent Southwest a copy of the lien when it was recorded, Southwest cannot establish that it was a purchaser without notice.

## RECONDUCTED TRUSTEE'S SALE

■ Southwest next contends that the trial court erred in granting CS & W judgment on its declaratory relief count by determining that Southwest was not entitled to reconduct the trustee's sale under Deed of Trust I with proper notice to CS & W. We agree the ruling was erroneous.

It is clear in Arizona that a foreclosure sale can be reconducted when a lienholder has been inadvertently omitted from the list of those given notice.

'If the owner of the equity has, through mistake, not been made a party, the mortgagee, who has purchased at a sale, may maintain a second action to foreclose the equity of such owner, and for a new sale, but he cannot recover the costs of the previous sale.'

*Williams v. Williams,* 32 Ariz. 164, 172, 256 P. 356, 358 (1927), quoting 3 Jones, *Mortgages* § 1679 (7th ed.). In that case, the court ruled that a mortgagee could maintain a second foreclosure action to include a subsequent grantee of a half interest in the property who had been inadvertently omitted from the first action. That rule was also followed in *Deming National Bank v. Walraven,* 133 Ariz. 378, 651 P.2d 1203 (App.1982).

Thus, Southwest was entitled to conduct a second sale pursuant to Deed of Trust I, a sale of which it gave notice shortly before trial. Southwest apparently did conduct the sale and again purchased the property and received a trustee's deed for it.

## APPORTIONMENT OF LIEN

■ Because CS & W's lien was superior to Deed of Trust II, that trustee's sale had no effect on its lien, whether or not it had notice of that sale. Southwest contends, however, that the lien must be apportioned so that CS & W can only collect 4/52 of the amount owed because Deed of Trust II covered only four lots in the fifty-two-lot subdivision. The trial court did not address the issue of apportionment because it determined that Southwest's attempt to reconduct the trustee's sale as to Deed of Trust I was invalid so that Southwest had title to the forty-eight lots subject to CS & W's lien.

Southwest argues that we should apply the general rule quoted in *Associated Sand & Gravel Co. v. DiPietro,* 8 Wash.App. 938, 942, 509 P.2d 1020, 1023 (1973), quoting 10 G. Thompson, *Real Property* § 5212, at 366 (Grimes repl. ed. 1957):

'The general rule is that a single mechanic's lien against more than one lot or parcel of land cannot be enforced against less than the entire property liened, without first showing what part of the entire lien may properly be allocated to the lot or tract against which enforcement is sought.'

That rule apparently is the majority rule, Annotation, *Enforceability of Single Mechanic's Lien upon Several Parcels against Less than the Entire Property*

*Liened,* 68 A.L.R.3d 1300 (1976), and we have no quarrel with it.

Before the rule is applied, however, the party asserting that apportionment is required must establish either that the work performed was such that it is amenable to apportionment or that equity and good conscience require apportionment. *Independent Trust Corp. v. Stan Miller, Inc.,* 796 P.2d 483 (Colo.1990). The burden of proving that CS & W's work is capable of apportionment is on Southwest. *Id.; Associated Sand & Gravel, supra.* Southwest contends that because CS & W's lien is superior to four lots only, the appropriate apportionment is a simple formula of $\frac{4}{52}$. We disagree. CS & W installed water lines, sewer lines, a roadway, sidewalks, curbs, and fire hydrants in the subdivision. In light of the nature of that work, we see no equity in Southwest's contention that the value of the work performed as to the four lots is simply $\frac{4}{52}$ of the total work performed. None of those improvements has value simply by running through, on, or adjacent to the four lots; the improvements obtain their value by being connected to the improvements that cover the entire subdivision. We conclude, therefore, that Southwest failed to carry its burden of establishing that an equitable apportionment of the work performed can be made, *Independent Trust, supra;* thus, no apportionment is required.

### AWARD OF PREJUDGMENT INTEREST

Finally, Southwest contends that the court erred in awarding CS & W prejudgment interest, arguing that prejudgment interest is not available because CS & W is not in privity with Southwest. As authority, Southwest cites only two Ohio cases. In doing so, it ignores Arizona case law, which holds that a successful party is entitled to prejudgment interest so long as the amount of the claim is a liquidated sum, regardless of whether the parties are in privity. *Patton v. County of Mohave,* 154 Ariz. 168, 741 P.2d 301 (App. 1987); *Trus Joist Corp. v. Safeco Insurance Co.,* 153 Ariz. 95, 735 P.2d 125 (App.

1986). Indeed, in Arizona, prejudgment interest is awarded in both tort and contract claims. *Banner Realty v. Turek,* 113 Ariz. 62, 546 P.2d 798 (1976). We find no merit to Southwest's contention that CS & W was not entitled to prejudgment interest.

Affirmed.

DRUKE, P.J., and HATHAWAY, J., concur.