883 P.2d 404

**CS & W CONTRACTORS, INC.,**
an Arizona corporation,
Plaintiff/Appellee,

v.

**SOUTHWEST SAVINGS & LOAN AS-SOCIATION, an Arizona corpora-tion, Defendant/Appellant.**

No. CV–93–0020–PR.

Supreme Court of Arizona,
En Banc.

Oct. 25, 1994.

Reconsideration Denied Nov. 29, 1994.

Mariscal, Weeks, McIntyre & Friedlander by Brian M. Mueller, Phoenix, for CS & W Contractors, Inc.

Jackson, White & Gardner by Michael R. Pruitt and Eric M. Jackson, Mesa, for South-west Sav. & Loan Ass'n.

MARTONE, Justice.

This case requires us to decide whether a subcontractor may extract the value of improvements on a fifty-two lot subdivision from four of the lots. Because we hold that it may not, we partially vacate the opinion of the court of appeals and remand to the trial court for further proceedings.

### Background

In June, 1986, Southwest Savings and Loan (Southwest) loaned money to Sencorp for the development of a fifty-two lot subdivision. The loan was secured by a deed of trust on all fifty-two lots (Deed of Trust I). Sencorp contracted with CS & W Contractors, Inc. (CS & W) in July, 1986, for the construction of streets, sewers, curbs, gutters, and water lines for $153,370.70. CS & W began the work in August, 1986, and completed it in February, 1987. Sencorp paid some, but not all, of the money owed to CS & W.

Southwest loaned Sencorp additional money in November, 1986, secured by a deed of trust covering only lots thirty-nine through forty-two (Deed of Trust II). In May, 1987, Southwest released these four lots from

Deed of Trust I. CS & W filed a lien on the entire property on May 20, 1987, alleging that Sencorp still owed it $93,724.45. This lien had attached to the property when CS & W began its improvements. The release by Southwest gave CS & W's lien priority on lots thirty-nine through forty-two, but Southwest still had priority on the other forty-eight lots. See A.R.S. § 33–992(A).

Sencorp filed for bankruptcy protection in September, 1987. After successfully seeking relief from the automatic stay, Southwest proceeded with trustees' sales under Deeds of Trust I and II, but failed to give notice to CS & W of the sale under Deed of Trust I. Southwest was the successful bidder at both sales, obtained trustee's deeds, and recorded them in April and May, 1988. In August, CS & W brought this action against Southwest to foreclose its blanket lien. In March, 1990, Southwest again foreclosed Deed of Trust I, this time giving the required notice. Southwest was the purchaser at the second sale and received a trustee's deed.

The trial court did not reach the issue of whether CS & W could assert its entire lien against the four lots or whether apportionment was required. After a trial to the court, it held that CS & W's blanket lien on all lots was in force and had priority over all other liens, and that the first foreclosure of Deed of Trust I had no effect on CS & W's lien because of lack of notice to CS & W. It also held that Southwest's second sale under Deed of Trust I would not affect CS & W's lien, meaning that CS & W retained a lien on all fifty-two lots.

The court of appeals reversed on the issue of the second trustee's sale, holding that "a foreclosure sale can be reconducted when a lienholder has been inadvertently omitted from the list of those given notice." *CS & W Contractors, Inc. v. Southwest Sav. & Loan Assoc.*, 175 Ariz. 55, 61, 852 P.2d 1239, 1245 (App.1992). Foreclosure by a superior lienholder extinguishes the liens of inferior lienholders. The second trustee's sale left CS & W with a lien on only the four lots that Southwest had released from Deed of Trust I. As to the issue of apportionment, the court held that Southwest would have to show that the work performed by CS & W

was "amenable to apportionment." *CS & W*, 175 Ariz. at 62, 852 P.2d at 1246. Southwest, according to the court, did not satisfy that burden because "the improvements obtain their value by being connected to the improvements that cover the entire subdivision." *Id.* Therefore, CS & W could assert the entire lien amount against the four lots on which it had priority. We granted review on the issue of apportionment.

### Analysis

■ We are of the view that this case is directly controlled by *Wahl v. Southwest Sav. & Loan Assoc.*, 106 Ariz. 381, 476 P.2d 836 (1970). There, the same lender, Southwest Savings and Loan, attempted to foreclose on twenty-four separate mortgages on lots in a multi-family housing subdivision. Southwest had priority on eighteen of the mortgages and various subcontractors had priority on the other six. The trial court apportioned the lien amounts; the lien for each lot was to be the reasonable value of the improvements made on that lot. The subcontractors argued on appeal that there should be no apportionment and that they should be able to extract the full amount of their liens from the six lots on which they had priority.

The court of appeals disagreed and held that apportionment was necessary. It noted that the legislature had intended to "relate mechanics' and materialmen's liens to the particular building or improvement to which their services or materials have contributed value." *Wahl v. Southwest Sav. & Loan Assoc.*, 12 Ariz.App. 90, 98, 467 P.2d 930, 938 (1970). The court further noted that the legislature had not intended lienors to extract more from a parcel of land than the value of the labor and materials put into that land. While this might normally mean that subcontractors would have to prove the value of improvements, the court selected a different method of apportionment. The subcontractors had priority on six of twenty-four lots. The materials that went into each lot were substantially similar, given that the construction project called for nearly identical buildings on each lot. Because of this symmetry in construction, the court of appeals gave priority on six-twenty-fourths of

the total amount of materials furnished to the whole project.

Although we partially vacated the court of appeals' opinion on review, we did not disturb the holding that there should be some sort of apportionment (i.e., the entire lien could not be enforced against fewer than all of the lots). We did, however, change the method of apportionment. Instead of a simple ratio, we held that the value of the actual labor and materials put into each lot should be the amount of the lien for that lot. *Wahl,* 106 Ariz. at 386, 476 P.2d at 841. This method was appropriate because the labor and materials that gave value to each lot were not difficult to establish. We relied on the equitable principle that a lien should be based on what is done to enhance the value of the property.

*Wahl* stands for the propositions that (1) there should be apportionment when a lienor seeks to assert its entire lien against less than all of the property, and (2) where the value of the actual labor and materials used to improve each lot can be readily determined, the priority is for that amount.

The court of appeals in this case incorrectly allowed CS & W to take the full amount of its original, fifty-two lot lien from only four lots. The court concluded that because there was no specific value conferred on any individual lot, there could be no apportionment and the lien's full value could be extracted from only four lots. But *Wahl* holds otherwise. A lienor cannot extract the value of improvements made to several lots from fewer than all those lots. Apportionment is required when the superior lien runs to fewer than the total number of improved lots. A different result would allow CS & W to resurrect an extinguished lien and obtain a priority to which it is not entitled. Because CS & W retained a superior lien on only four lots and that lien cannot be enforced to the full extent of the improvements made to the subdivision, we are faced with the question of what amount CS & W can extract from those four lots.

*Wahl* did not address the issue of the value or method of apportionment when improvements benefit all lots in a subdivision instead of individual lots. Basic infrastructure, such as roads, sewers, and water lines, benefit the entire subdivision and are only fortuitously located on any given lot. Each lot is equally benefited. Every future homeowner will use the same streets, water lines, sewers, and fire hydrants. The "equitable principle" in *Wahl* requires proof of specific benefit to specific lots in a subdivision when the value of that benefit is easy to determine. But if all lots benefit equally from infrastructure an equal apportionment is satisfactory, unless the claimant can prove disproportionate value was put into a lot over which it had priority.

In this case, CS & W has a valid, superior lien on four of the fifty-two lots that were benefitted through improvements. If CS & W can demonstrate that it placed more than equal value on any of the four lots for which it has priority, it may do so. If it chooses not to do so, or cannot do so, then each lot received one-fifty-second of the benefit conferred on the whole subdivision. The value of the surviving lien, then, would be four-fifty-seconds of the value of the original lien covering the entire subdivision, less payments made. CS & W would be entitled to extract four-fifty-seconds of that amount from lots thirty-nine through forty-two.

### Disposition

Because we hold that the lien in this case should have been equitably apportioned, we vacate that part of the court of appeals' opinion concerning apportionment and remand to the trial court for proceedings consistent with this opinion. CS & W's request for attorneys' fees is denied.

FELDMAN, C.J., MOELLER, V.C.J., ZLAKET, J., and RUTH V. McGREGOR, Judge, Court of Appeals, concur.

CORCORAN, J., did not participate in the determination of this matter. Pursuant to Ariz. Const. art. VI, § 3, RUTH V. McGREGOR, Judge, Court of Appeals, Division One, was designated to sit in his stead.