## Richmond

PIC CONSTRUCTION COMPANY, INC., ETC. V. FIRST
UNION NATIONAL BANK OF NORTH CAROLINA, ET AL.

March 3, 1978.

Record No. 761353.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Daniel M. O'Connell, Jr. (O'Connell & Mayhugh, P.C.,* on briefs), for appellant.

*Edward D. McGuire, Jr. (William F. Patten; Wilkes & Artis,* on brief), for appellee.

No brief for David W. Kelsey and Laura S. Kelsey, appellees.

COMPTON, J., delivered the opinion of the Court.

This is the second decision on the subject of creditors' rights and mechanics' liens announced by us today. In the first, *Loyola Federal Savings and Loan Association* v. *Herndon Lumber & Millwork, Inc.,* 218 Va. 803, 241 S.E.2d 752 (1978), we decided an issue common to both cases. There, we ruled that a trustee in a deed of trust was not an "owner", within the meaning of Code § 43-4, and that the failure to name such trustee in a memorandum for mechanic's lien did not invalidate the lien. Here, we examine the legal effect of the release of one lot from a joint unapportioned lien memorandum.

In January of 1973, a deed of trust was placed on Lots 19, 20, 23, 65, 66 and 68 of Section I in Marstella Estates, a subdivision in Fauquier County. The encumbrance was to secure a loan to the then owner, Robert H. Fargher, Inc., made by appellee First Union National Bank of North Carolina for the construction of single-family dwellings on the lots. During construction, Fargher contracted with appellant PIC Construction Company, Inc., also known as PIC Corporation, for construction and installation of septic tanks, septic tank drain fields, and driveways, as well as for the grading of the home sites on these lots.

In March of 1975, PIC recorded the memorandum of mechanic's lien in issue here, claiming that a lump sum of $3,476 was due, with interest from February 14, 1975, for work done on Lots 12, 20, 23, 65, 66 and 68. The sum was not allocated among the several lots; that is, no designation was made as to the portion of the total indebtedness applicable to each of the six lots encumbered.

About two months later, in May of 1975, PIC filed a bill in chancery to enforce the mechanic's lien against five of the lots, naming the Fargher corporation and Fargher, individually, as defendants. Specified in the bill were Lots 12, 20, 23, 66 and 68. The sum claimed was again $3,476. No itemized statement of the account was filed with the bill, see Code § 43-22, although the pleading stated that such "breakdown of the total charges" was "attached."

In June, almost three weeks later, by a marginal note on the recorded memorandum of lien, PIC released the lien as to Lot 68. The marginal release did not show any amount of indebtedness being allocated to that lot.

Thereafter, foreclosure proceedings commenced under the deed of trust and two trustee's deeds resulted: one conveyed Lots 19, 20, 23 and 66 to First Union, and was recorded in October of 1975; the other conveyed Lot 65 to appellees David W. Kelsey and Laura S. Kelsey, and was recorded November 10, 1975.

Two days later, on November 12, 1975, before there had been any appearance in the suit to enforce the mechanic's lien, PIC was permitted, in an order entered ex parte, to amend the bill of complaint to designate Lot 19 in lieu of Lot 12 and Lot 65 in place of Lot 66.

About three weeks thereafter, the Kelseys petitioned to intervene in the suit to enforce, claiming the lien was void as to Lot 65. Subsequently, the trial court allowed intervention and in March of 1976 the Kelseys filed a demurrer attacking the validity of the lien and raising, among other things, the issues of failure to apportion and release. During that same month, by deed dated March 4, and recorded March 16, 1976, First Union conveyed Lots 19, 20, 23 and 66 to Pierre Setti, Jr. and Patricia H. Setti, who later also sought to intervene in the suit to enforce the lien.

On March 10, 1976, First Union filed in the court below a separate proceeding, by petition under Code § 43-17.1, naming as defendants PIC and Southern Iron Works, Inc., which had also filed a mechanic's lien against certain of the lots in question.[1] This proceeding sought to have declared invalid and unenforceable, for various reasons, the liens upon Lots 19, 20, 23 and 66. PIC filed a responsive pleading to First Union's petition after which the trial court heard argument of counsel on two occasions and in the process consolidated the two suits. On May 4, 1976, the day of the second hearing, PIC lodged with the clerk, in the suit to enforce the lien, itemized invoices showing work performed and balances due, still totalling $3,476, on Lots 19, 20, 23, 65, 66 and 68. The memorandum of counsel addressed to the clerk stated that when the original bill was filed the invoices were "inadvertently left out."

Upon consideration of the pleadings and argument of counsel, the trial court dismissed PIC's bill of complaint in a June 1976 decree from which this appeal stems. The court determined that the mechanic's lien was invalid and unenforceable because, *inter alia*, there was a failure to apportion in the memorandum and because the release of Lot 68 precluded assertion of the security upon the remainder of the lots liened. The court below also granted the prayer of First Union's petiton that, pursuant to Code § 43-17.1, *supra*, PIC's memorandum of lien be removed from record. To these adverse rulings in both suits, we granted PIC an appeal.[2]

■ At the threshold, we are confronted with a question of standing. PIC contends the trial court erred in allowing First

---

[1] Enacted in 1975, § 43-17.1 provides:

"Any party, having an interest in real property against which a lien has been filed, may, upon a showing of good cause, petition the court of equity having jurisdiction wherein the building, structure, other property, or railroad is located to hold a hearing to determine the validity of any perfected lien on the property. After reasonable notice to the lien claimant and any party to whom the benefit of the lien would inure and who has given notice as provided in § 43-18 of the Code of Virginia, the court shall hold a hearing and determine the validity of the lien. If the court finds that the lien is invalid, it shall forthwith order that the memorandum or notice of lien be removed from record."

[2] Southern Iron Works, Inc. and the Settis are not parties to this appeal. Southern's lien was declared invalid for failure to timely file a suit to enforce it. No order was entered formally making the Settis parties to the proceedings below, although the final decree specifically adjudicated the issues as to them.

In addition, even though the Kelseys are parties appellee, they have made no appearance before us.

Union to participate in these suits because "at the time it sought to enter these causes, it had already by deed conveyed its interest to [the Settis]." The question thus becomes: Did First Union, at the time it filed its March 1976 petition, have "an interest in [the] real property against which [the] lien [had] been filed", within the meaning of Code § 43-17.1, *supra*? We think it did, even if we assume delivery of the March 4 deed took place before suit was filed six days later. According to an attested copy of the deed contained in the record on appeal, First Union's conveyance to the Settis was "with special warranty of title". Under Code § 55-69, such a promise has the effect of a covenant by a grantor that he will forever warrant and defend such property "unto the grantee . . . against the claims and demands of the grantor, and all persons claiming . . . through . . . [the grantor]." As a mechanic's lienor, PIC was a person claiming "through" First Union within the meaning of § 55-69. Thus, in view of its covenant and because the property covered by a mechanic's lien still remains as security after conveyance to a subsequent purchaser, First Union possessed a sufficient "interest", within the meaning of § 43-17.1, to have standing to enter this controversy.

We now turn to the dominant issues addressed by the parties. They are: First, is this blanket or joint mechanic's lien invalid and unenforceable because PIC has failed to apportion in the memorandum of lien the amount of its claim for the work performed and materials furnished by it on each of the various lots described in the memorandum? Second, does the release of one lot from this memorandum result in the release of all the remaining lots specified therein?

PIC contends the trial court erred in holding the lien invalid for its failure to apportion. It argues that the mechanics' lien laws do not require the mechanic "to prove his case" in the memorandum. Instead, PIC says, such particularity is only necessary when the subsequent suit is brought to enforce the lien and when evidence to support the claim is adduced. Thus, it argues, the lien should be declared valid, pending proof of the specific amounts due at the hearing on the merits, because it allocated the lien to each lot in its bill to enforce the lien, "as shown by the [invoices]" filed May 4, 1976. In addition, PIC contends the trial court erred in holding that the release of Lot 68 resulted in a release of the other lots in the memorandum. It

argues that the release principle relied on by the chancellor applies only when there are "competing lien holders" and, because the Southern Iron Works lien expired for failure to timely file a bill to enforce it, there were no competing lienors here; it says that only the lienor PIC and the owner Fargher were "involved" when the memorandum and the bill to enforce were filed.

First Union contends that each of the six lots liened by PIC represents a distinct and separate security and one lot cannot be made to stand as the security for another. Hence, it argues, the memorandum of lien must state the amount of the claim for the work done and materials furnished upon each building and lot on which a lien is claimed for work done. Additionally, First Union urges, relying, as did the trial court, on *Weaver* v. *Harland Corporation*, 176 Va. 224, 10 S.E.2d 547 (1940), that the release of one lot from an unapportioned memorandum, under these circumstances, requires that the remaining lots be released from the protection of the lien. It contends that to permit a release of one without release of all would enable the lienor to shift encumbrances at his pleasure and to place the bulk of a claim upon one building in an amount exceeding the value contributed to such building.

■ We move straight to the release question, it being unnecessary to decide whether PIC's failure to apportion in the memorandum was fatal to its validity. Moreover, joint or blanket liens being lawful in Virginia, there already is guidance in the decisions on the mechanic's duty to allocate. *Compare United Masonry, Incorporated* v. *Jefferson Mews, Inc.*, 218 Va. 360, 237 S.E.2d 171 (1977), *with Sergeant* v. *Denby*, 87 Va. 206, 12 S.E. 402 (1890), *and In re Thomas A. Cary, Inc.*, 412 F.Supp. 667 (E.D. Va. 1976), *aff'd per curiam*, No. 76-1879, 562 F.2d 48 (4th Cir. Jun. 21, 1977) (unpublished opinion). Thus, we will agree with PIC and assume without deciding that, under these facts, the memorandum of lien was not void for failure to specify the portion of the total debt allocable to each of the lots encumbered.

But while we do not confront directly the question of apportionment, the failure to allocate nevertheless pervades the release issue, as we shall demonstrate. PIC filed a lump-sum claim in its memorandum against six separate lots. It then filed its bill to enforce the lien against five of those lots. Lot 65 was not listed in the bill as originally filed, yet the same lump sum

was shown there as had been set forth in the memorandum as the amount of the claim. Thus it appeared that no dollar amount was attributable to Lot 65 in the memorandum of lien. Also, Lot 68 was designated in the memorandum and initially in the bill to enforce. But within a month after the bill was filed, PIC released Lot 68 from the lien and did not indicate any amount assigned to the work on that lot. Presumably, then, on the face of the records at that time, no amount was due as the result of work on Lot 68. Next, the Kelseys purchased Lot 65 at foreclosure. Thereafter, the initial bill was amended, due to "typographical errors", to include Lot 65 in place of Lot 66. The lump-sum amount claimed was again left unchanged. So Lot 66, too, apparently had no dollar value ascribed to it as the result of work performed thereon by PIC. Still, all the while, as revealed by an examination of the invoices which ultimately surfaced at the time of the last trial court hearing in May of 1976, work had been performed on Lots 19, 20, 23, 65, 66 and 68, and PIC apparently was able to specify at the time the memorandum was filed in March of 1975 the exact amount due for work done on each of those six lots — the detailed invoices in disproportionate sums are dated in December of 1974 and January of 1975. (Lot 12, listed in the memorandum but removed from the suit to enforce, is not mentioned in the invoices.) What then is the legal effect of this puzzle?

Under similar circumstances, this court decided in *Weaver* v. *Harland Corporation*, *supra*, that the release of a portion of properties embraced by a joint mechanic's lien precluded its successful assertion against the remainder when other lien creditors were affected. 176 Va. at 227, 10 S.E.2d at 548. In that case, several mechanic's lienors had released as many as 12 lots from the operation of a blanket lien previously filed upon 20 lots in a subdivision. The claimants then attempted to enforce their joint liens in the amount of the total balances due for the materials furnished for the entire group of 20 lots against as few as eight lots. In deciding that the releases rendered void the liens against the other properties for the balances claimed due, we pointed out that if such procedure was permitted the lienors "could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive

to good conscience and equity." 176 Va. at 227-28, 10 S.E.2d at 548. We noted, however, that if there are no third persons whose interests would be injuriously affected by the release, such a procedure would not invalidate the lien as to unreleased lots. 176 Va. at 234, 10 S.E.2d at 551.

The foregoing principles apply with equal force to this case. Here, PIC's contention to the contrary notwithstanding, there were third persons whose interests could be injuriously affected by the release, as the chronology developed. To begin with, the liens were placed on property already subject to the lien of a deed of trust. Then, Lot 68 was released. Next, the deed of trust was foreclosed. Thereby, the rights of the Kelseys, purchasers at the foreclosure sale, entered the picture. Thereafter, the interests of the Settis, purchasers from the noteholder First Union, also became affected. Thus, because of the release of Lot 68, these third parties were vulnerable to a claim for an item of work performed on Lot 68 being included in the lien on the lots which they had purchased. Code § 43-4, under which PIC proceeded, requires, in part, that in order to perfect the lien a mechanic shall include in his memorandum "the amount and consideration of his claim . . . and . . . a brief description of the property on which he claims a lien." This means that the document should contain a statement of the amount claimed for work done and materials furnished for improvement of the identical lot upon which the lien is claimed and a description of that very property. So a lien on Lot 65, for example, cannot be established by later showing that work was done on the released Lot 68 *and* on Lot 65, and then estimating the amount of work and materials furnished for improvement of Lot 65. When PIC released Lot 68 from the operation of the lien, it became estopped from enforcing the lien on the remaining lots as against other lien holders and purchasers. *Weaver, supra*, 176 Va. at 229, 10 S.E.2d at 549. Endorsement of the procedure followed in this case, in which existed the opportunity for the lienor to shift amounts and juggle claims among the individual properties involved, would be contrary to the manifest policy of the mechanics' lien laws and in derogation of the rights of interested third parties.

For these reasons, we believe the trial court correctly decided that PIC's mechanic's lien was void as to Lots 19, 20, 23, 65 and 66. Accordingly, the decrees appealed from will be

*Affirmed.*