## CIRCUIT COURT OF FAIRFAX COUNTY

B. T. Electrical Enterprises, Inc.

v.

ADC Fairways Corp.


Gary A. Sturgill

v.

ADC Fairways Corp.

December 1, 1981

Case Nos. (Chancery) 70851, 70852

By JUDGE THOMAS J. MIDDLETON

Plaintiff B. T. Electrical Enterprises, Inc., is a sub-contractor which delivered materials and performed electrical work on forty-two units in a condominium known as 4355 Ivymont Court Condo. Plaintiff Gary A. Sturgill is a subcontractor who delivered materials and performed plumbing, heating and air conditioning work on forty-two units in the same condominium. In each case, the work was done pursuant to an oral contract with a general contractor, Johnmark Construction, Inc.

Each Plaintiff filed a blanket mechanic's lien encumbering the units upon which work was performed. The liens stated the full amounts claimed to be due under the respective contracts of each subcontractor. In filing their mechanic's liens, each Plaintiff failed to list in the memorandum the names of the owners of record of fifteen of the units. These units had been sold by Defendant ADC Fairways Corporation prior to the filing of the liens. Plaintiffs failed to perfect their liens in accordance

with the provisions of Virginia Code Section 43-4 with respect to these fifteen units.

The parties agree that the liens are ineffective as to the fifteen units. The Defendants assert that the ineffectiveness of each lien as to the fifteen units invalidates each mechanic's lien entirely. The Plaintiffs, on the other hand, seek to enforce the liens on the remaining units.

The Virginia Supreme Court first recognized the validity of a "joint" or "blanket" mechanic's lien in *Sergeant v. Denby*, 87 Va. 206, 2 S.E. 402 (1890). In *Sergeant*, there was one contract between the parties for the construction of two houses. The general contractors filed a single mechanic's lien to encumber both houses without specifying the amount due on each house. The owner contended that there must be a separate lien on each building because a joint lien was not provided for by statute. The Supreme Court held that "as between the general contractors and the owner" a joint lien was valid because the contract was for an entire work. A separate contract for each house had not been negotiated, and the contract did not require separate accounts to be maintained for each house.

In the case of *In Re Thomas A. Cary, Inc.*, 412 F. Supp. 667 (E.D. Va. 1976), aff'd. 562 F.2d 48 (4th Cir. 1977), the Federal District Court discussed the use of blanket liens when innocent third parties are involved. In *Cary*, the mechanic's lien was filed against a 50-lot subdivision for materials supplied that had not been allocated to specific lots. The parties contesting the lien, a lender and a title insurer, argued that the endorsement of blanket liens in *Sergeant* was limited to cases involving contractors and owners. They relied on *Weaver v. Harland*, 176 Va. 224, 10 S.E.2d 547 (1940), for the proposition that the use of such liens is not allowed in cases including third parties. The District Court disagreed and held that blanket liens were appropriate in that case because the nature of subdivision development "provides impediments to the use of a single lien." 411 F. Supp. at 674. In addition, the Court stated that the holding of *Weaver* was limited to the effect of releases on mechanic's liens. 412 F. Supp. at 673. This specific issue is discussed below.

The question of the validity of a blanket mechanic's lien was addressed again in *United Masonry v. Jeffer-*

*son Mews,* 218 Va. 360, 237 S.E.2d 171 (1977), this time in the context of a condominium project. In *United Masonry,* the Plaintiff filed a single mechanic's lien for work done under two separate contracts, one contract for construction of a bathhouse which would benefit the entire 264 unit project and the other contract for work done on the initial 132 units.

The Court did not question the validity of a blanket mechanic's lien on a condominium project. Rather, it narrowed the issue to whether the blanket mechanic's lien was invalid "for failure to apportion the value of the work performed between the individual condominium units and the common element facilities." 218 Va. at 371.

The lien in question failed to allocate the amounts due under each contract, thereby seeking to encumber the entire 264 unit project for work done only on 132 units. In response, the Supreme Court stated that the object of the mechanic's lien law:

> is to give those who, by their labor and material, have enhanced the value of the building the security of a lien thereon to the extent they have added to its value, *but not to give a lien therefor upon property not benefited by such labor and materials.* (citation omitted) Such policy of the law becomes particularly important when, as here, the interests of third party. . . may be impinged upon by a joint lien. 218 Va. at 378 (emphasis added).

The memorandum of mechanic's lien in *United Masonry* attempted to lien property which had not been benefited by the work. As a result, the Court found that the memorandum failed to substantially comply with Va. Code Section 43-3, and the lien therefore was invalid. *Id.*

The cases discussed above, *Sergeant, Cary,* and *United Masonry,* recognized blanket mechanic's liens in Virginia. These cases indicate that when work is performed under a single contract, a single mechanic's lien may be perfected to encumber all the units or lots which are benefited by such work. Moreover, the mechanic's lien will not be invalid for failure of the memorandum to apportion the lien among the individual units. However, when there is a contest for priority of encumbrances and the interests of third parties are involved, the question of apportion-

ment becomes crucial to the issue of release in the blanket lien situation.

In *Weaver v. Harland Corporation*, the Virginia Supreme Court addressed the issue of releases and the effect which they have upon mechanic's liens. The Court held that "the weight of authority and the force of reason sustain the view that the release of a portion of the properties, *under the circumstances of this case*, embraced by the lien, precludes its successful assertion against the remainder. *This is only true where the interests of other lien creditors are affected.*" 176 Va. at 227 (emphasis added).

*Weaver* involved several lienors who contracted to furnish materials and labor for the construction of twenty houses. Prior to filing a lien, each lienor released some of the houses for payments made under the contract. There was nothing to indicate the value of materials which went into each house, and in most cases it was impossible to determine those values. In each case, the mechanic's liens filed against the unreleased houses were filed for the balance due to the particular lienor. 176 Va. at 227.

The Court held that under those circumstances the liens were invalid because "the mechanics lien lienors could so shift their liens as to unduly burden some of the lien subjects and relieve others, to the extent of imperiling the interests of other lien creditors which would not be consonant with the intent and spirit of the statute and would be offensive to good conscience and equity." 176 Va. at 227-228. The Court went on to demonstrate the "undue burden" created by the releases in the case of one lienor. Its contract was for $7,000.00 to work on twenty houses, an average of $350.00 per house. It filed a lien against eight houses for a balance due of $4,655.00 or an average of $588.00 per house. 176 Va. at 228. Clearly the releases in *Weaver* adversely affected the interests of third parties. This last consideration, the adverse effect on third-party interests, is the primary factor in the *Weaver* decision. The Court stated that "the condition by which the validity of the lien is determined, is that there were no third persons whose interests were injuriously affected by the release." 176 Va. at 234. It follows that if a release does not injuriously affect third party interests then the lien may be valid. Indeed the Court expresses this view when

it quotes with approval 40 Corpus Juris 341, Section 458: "A release of the lien as to part of the property covered thereby does not destroy the lien on the rest of the property; but where one building is released, an item for work or materials thereon cannot be included in a lien on the remaining buildings." 176 Va. at 233.

Inferences which may be drawn from *Weaver* squarely address the cases at bar. A mechanic's lien will not fail because of a release as to part of the property encumbered if that release does not adversely affect third party interests. And, third party interests are not adversely affected if the remaining encumbered property is not charged for items relating to the released portions.

The Virginia Supreme Court has decided three cases since *Weaver* which deal with the effect of releases on mechanic's liens. In *PIC Company v. First Union Bank*, 218 Va. 915, 241 S.E.2d 804 (1978), the court examined the legal effect of the release of one lot from a blanket unapportioned lien memorandum filed against six lots in a subdivision. The lower court had determined that the mechanic's lien was invalid and unenforceable because there was a failure to apportion in the memorandum and because the release of one lot precluded the assertion of the security upon the remainder of the lots liened. 218 Va. at 918.

The Supreme Court stated that it was unnecessary to decide whether the failure to apportion in the memorandum was fatal to the validity of the lien. 218 Va. at 920. The circumstances of the case were found to be similar to those in *Weaver*; i.e. there were third persons whose interest could be injuriously affected by the release. Therefore, based on the rationale of *Weaver*, the lien was invalid.

The next Virginia case to address the release issue was *West Alexandria Properties v. First Virginia Mortgage*, 221 Va. 134, 267 S.E.2d 149 (1980). That case involved three parcels of land on which construction of utility lines and other improvements was commenced. While the construction was in progress, one of the parcels was dedicated to the public, and the other two were sold to a creditor. Subsequently, the general contractor filed several memoranda of liens against the non-dedicated parcels for improvements made on all three parcels. The opinion states that the total amount due for improvements was $125,154.47, but only $36,123.70 was attributable

to the two parcels on which the lien was claimed. 221 Va. at 137.

The court analogized the dedication of the one parcel of land to the releases in *PIC* and *Weaver*. 221 Va. at 142. This "release" shifted the burden of the lien to the remaining two parcels and injured the interest of the purchaser by encumbering those parcels with a disproportionate share of the debt claimed in the memorandum of lien. *Id*.

The latest pronouncement by the Virginia Supreme Court on the issue of release is *United Virginia Mortgage Corporation v. Haines Paving Co., Inc.*, No. 790071 (April 24, 1981) [221 Va. 1047]. In *Haines Paving*, a "blanket" mechanic's lien was asserted, without apportionment of the claim, against all the lots in a subdivision. The claim was for labor and materials furnished in the construction of streets in the subdivision. The memorandum of lien named the subdivision owner (pursuant to Va. Code Section 43-4) but failed to name the owners of Lot 56 which had been sold previously. The Chancellor "released" the lien as to that lot but validated the lien on all the remaining lots.

On appeal, creditors secured by a deed of trust on the property asserted that the failure to perfect the unapportioned mechanic's lien against one of the lots invalidated the lien as to all the lots. The court declined to decide whether the failure to apportion invalidated the lien memorandum, and stated:

> Even if the memorandum was valid, the question remains whether the lien securing the unapportioned claim was enforceable under the circumstances of this case. Haines failed to perfect the lien upon one of the lots he sought to encumber, and the chancellor "released" the lien as to that lot. Like the releases in *PIC*, this shifted the full burden of the claim to the remaining lots. As the secured creditor under a deed of trust, UVMC had a valuable interest in those lots. But, when such a shift in the burden occurs, the lien is enforceable only when "there were no third persons whose interests were injuriously affected" by the shift.

It is interesting to note that the lien was not invalidated solely because it was unperfected as to one owner of record. Instead, the court treated this as a release which adversely affected third-party interests. This was despite the Chancellor's finding that the amount sought could have been apportioned among the lots equally with no resulting unequal burden.

It is difficult to determine what the proper results should be in the cases at bar based on the decisions discussed above. On the one hand, *West Alexandria* allows enforcement of a mechanic's lien against the unreleased property to the extent of the value of the work done to that property. This would appear to be the result under the *Weaver* rationale as well. On the other hand, *PIC* and *Haines Paving* suggest that the opportunity for shifting burdens, such opportunity being created by an unapportioned lien memorandum, will invalidate the entire lien if there is a release as to any portion of the property.

Fortunately, the 1980 General Assembly amended Section 43-3(a) of the Virginia Code by adding a second paragraph which specifically addresses blanket liens and releases in condominium situations. The statute now reads, in part:

> any person providing labor or furnishing material to one or units or limited common elements within the condominium pursuant to a single contract may perfect a single lien encumbering the one or more units which are the subject of the contract or to which those limited common elements pertain, and for which payment has not been made. Va. Code Section 43-3(a).

In the cases at bar, the plaintiffs filed their mechanic's liens in accordance with this statutory provision. The fact that they failed to list the owners of fifteen of the encumbered units does not destroy the entire lien but instead is simply a failure to perfect the lien as to those units. *Haines Paving* provides that this failure to perfect acts to release those fifteen units from the mechanic's lien.

Under the rationale of *PIC*, these releases would invalidate the entire lien if the opportunity existed for the mechanic's lien lienors to "shift amounts and juggle claims" among the individual units. 218 Va. at

922. The court in *PIC* held that such an opportunity does exist when, as in the instant cases, the memoranda do not apportion the claims. However, the 1980 amendment removes this opportunity by providing a statutory method of apportionment:

> Whenever a lien has been or may be perfected encumbering two or more units, the proportionate amount of the indebtedness attributable to each unit *shall* be the ratio that the percentage liability for common expenses appertaining to that unit computed pursuant to Section 55-79.83(c) bears to the total percentage liabilities for all units which are encumbered by the lien. Va. Code Section 43-3(a) (emphasis added).

This amendment went into effect on July 1, 1980. The lienors in the cases at bar filed their liens in September of 1980. Therefore, they never had the opportunity to shift the burdens of their claims among the individual units because the indebtedness attributable to each unit was statutorily mandated.

There does not appear to be any requirement that lienors under 43-3(a) file documents which disclose the amount claimed against each unit. If the General Assembly had meant to impose such a requirement, it would have been made express in the statute. Such a requirement was imposed with regard to the installation of streets, sanitary sewers, and water lines when the 1979 General Assembly enacted Va. Code Section 43-3(b). There is no similar provision in the 1980 amendment.

It appears from the cases and the 1980 amendment that the plaintiffs should be able to enforce their liens against the unreleased units for the remaining portion of the indebtedness attributable to those units. This is also in accord with general principles of equity. The interests of third parties will not be adversely affected, thereby satisfying the requirements of *Weaver*. Additionally, the statute precluded the lienors from having the opportunity to shift the burdens among the units. This is in line with the rationales of *PIC* and *Haines Paving*.

The 1980 Amendment to Section 43-3(a) also addresses the question of releases and provides that "no such release

shall preclude the lien claimant from perfecting a single lien against the unreleased unit or units for the remaining portion of the indebtedness." Va. Code Section 43-3(a). This provision refers to a release which is executed prior to perfection and upon payment of the portion of indebtedness attributable to that unit. However, it indicates a desire on the part of the General Assembly to see that the mechanic's lien lienor gets paid.

Moreover, in *Clement v. Adams Brothers-Paynes Co.,* 113 Va. 547, 552, 75 S.E. 294 (1912), the court held: "The remedial portion of the (mechanic's lien) statute, which provides for enforcing the lien after it is perfected, is to be liberally construed but that portion dealing with the right to the existence of the lien is to be strictly construed." Here, as viewed by the Court, it is faced with enforcing a lien after it is perfected and should liberally construe the pertinent statutes.

The Motion for Summary Judgment filed on behalf of the Defendants is denied.