BROWN,/.,
This mechanics’ lien claim arises out of efforts to respond to a solvent spill at defendant’s chemical plant in Mill Hall, Pennsylvania. Because the spill caused groundwater contamination, in December 1988 the Department of Environmental Resources threatened to close the plant if defendant did not submit and implement an acceptable assessment and abatement plan.
On or about January 19, 1989, defendant entered into an oral agreement with plaintiff to provide hydrogeologic and engineering services related to the spill. There appears to be some disagreement as to the scope of the alleged oral contract. Plaintiff contends that it agreed to conduct assessment of groundwater contamination, to develop an assessment and abatement plan satisfactory to DER, and to implement that abatement plan. Defendant says it hired plaintiff only to prepare an assessment and abatement plan satisfactory to the DER. It is uncon-troverted that the abatement plan prepared by plaintiff was not accepted by the DER and that defendant terminated plaintiff upon such notification from the DER on July 7, 1989.
Between January 19, 1989 and July 7, 1989, plaintiff contends that it designed and supervised partial installation of an “improvement” on defendant’s *651 property in the form of an “abatement facility.” Plaintiff’s proposed “abatement facility” would have consisted of pipes, pumps and water purification equipment. It is uncontroverted that plaintiff supervised the drilling of numerous monitoring wells on defendant’s premises. These wells were useful to plaintiff in the assessment process. Plaintiff argues that the wells would have become part of the “abatement facility” that plaintiff proposed. Alternatively, plaintiff contends its work was a repair. Following oral arguments on the pending motion, plaintiff submitted a supplemental memorandum and affidavit stating that plaintiff designed and supervised the installation of flexible plastic pipes that changed the discharge locations of roof drains at defendant’s plant.
Defendant contends that the materials and services provided by plaintiff did not effect any permanent or substantial improvement on defendant’s property. Specifically, defendant represents to the court that most of the monitoring wells installed under plaintiff’s supervision have been removed. Although plaintiff apparently intended to use those monitoring wells as part of its proposed abatement plan, that plan was never put into effect and consequently, defendant argues, the monitoring wells were not part of an abatement process or permanent improvement at the plant. In response to plaintiff’s supplemental memorandum and affidavit alleging that plaintiff designed and supervised installation of a new drainage system on the office and manufacturing facility, defendant filed a supplemental affidavit from its plant manager stating that the drain pipes were installed under plaintiff’s supervision.
Plaintiff filed a mechanic’s lien in the amount of $55,849.02, plus interest, on October 10, 1989. On November 15, 1989 plaintiff filed a complaint requesting that judgment be entered on the mechanic’s *652 lien claim. In its answer defendant alleges that plaintiff failed to perform the services originally agreed to, that plaintiff failed to perform in a workmanlike manner, and that plaintiffs work was defective and in fact worsened conditions at the plant. (Answer paragraph 5.) In its answer, new matter, and set-off, defendant alleges breach of contract by plaintiff and claims a set-off against plaintiff in excess of $10,000. Defendant also filed the instant motion for summary judgment challenging the validity of plaintiffs mechanics’ lien claim.
ISSUES
(1) Whether defendant is entitled to summary judgment on the ground that plaintiff did not erect, construct, alter or repair, or furnish labor, material or supervision for the erection, construction, alteration or repair of an improvement as required by the Pennsylvania Mechanics’ Lien Act, 49 Pa.C.S. §1101 et seq.
(2) Whether this action is barred by the applicable statute of limitations set forth in 49 Pa.C.S. §1502(a)(l).
(3) Whether the court should strike plaintiff’s mechanic’s lien claim on the ground that plaintiff failed to provide a detailed statement of the kind of labor or material furnished pursuant to 49 Pa.C.S. §1503(b).
DISCUSSION
Under Pa.R.C.P. 1035(b), the court shall enter summary judgment where “there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.” In ruling on *653 a motion for summary judgment, the court is required to view the evidence in the light most favorable to the non-moving party. Schacter v. Albert, 212 Pa. Super. 58, 239 A.2d 841 (1968). The court must accept as true all well-pleaded facts in the non-moving party’s pleadings, and give the non-moving party the benefit from all reasonable inferences that can be drawn therefrom. Id.
Mechanic’s liens were not recognized at common law. Because they are purely a creation of statute, the Pennsylvania courts require that the Mechanics’ Lien Law be given a strict construction. Sampson-Miller Associated Companies Inc. v. Landmark Realty Co., 224 Pa. Super. 25, 303 A.2d 43 (1973). The Pennsylvania Mechanics’ Lien Act provides:
“Every improvement and the estate or title of the owner in the property shall be subject to a lien . . . for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement, provided that the amount of the claim . . . shall exceed $500.” 49 Pa.C.S. §1301. (emphasis supplied)
Thus, to claim a mechanic’s lien, a contractor must have undertaken the erection, construction, alteration, or repair of an “improvement.” An “improvement” includes:
“[A]ny building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended.” 49 Pa.C.S. §1201(1).
Pennsylvania courts have held that an “improvement” must be both substantial and perma *654 nent. Sampson-Miller at 29, 303 A.2d at 45. Additionally, the services, labor, and materials provided by the contractor must increase the value of the property or there is no right to a lien. Dagit v. Radnor Convalescent &. Nursing Home, 38 D.&C. 2d 389, 391 (1965). Finally, an improvement must be either physically attached to an existing structure or must be incidental to the erection, construction, alteration or repair of an existing building or structure. Joyce v. Sarnelli, 29 D.&C. 3d 544 (1984).
The court finds as a matter of law that the installation of monitoring wells is not an “improvement” under Pennsylvania law. Each monitoring well consisted of a piece of PVC piping two inches in diameter that was inserted into a drilled hole and capped on the surface end. The monitoring wells were not attached to any building, facility or structure. The wells could be removed simply by pulling the pipe out of the ground.
It is uncontroverted that most of the monitoring wells have now been removed. Accordingly, the court must accept as true the fact that the monitoring wells were not permanent. The court recognizes that plaintiff is arguing the wells would have been permanent had plaintiff’s proposed abatement plan been put into effect. Because plaintiff’s plan was abandoned, however, the wells apparently have served no permanent function. Additionally, there is no evidence in the record to suggest that the installation of the monitoring wells increased the value of defendant’s property. On the contrary, defendant alleges that the wells served to aggravate the existing problem with groundwater contamination and thereby increased the costs of abatement. Finally, it is uncontroverted that the monitoring wells were not *655 attached in any way to an existing improvement on defendant’s property.
The court also finds as a matter of law that the installation of flexible plastic pipes onto the roof drains at defendant’s office and manufacturing plant does not constitute an improvement. The affiant, M. Todd Giddings, states that the purpose of rerouting the drain pipes was to contain groundwater contaminants until the abatement process. This function is akin to plaintiff’s assessment responsibilities. Simply containing contamination, pending remediation, is not a permanent improvement. Moreover, the supplemental affidavit of defendant’s plant manager indicates that the flexible plastic pipe that plaintiff suggested defendant’s personnel attach to the roof drains has already been removed. Thus, the argument that the plastic pipes were somehow permanent is unavailing. Finally, there is no evidence that rerouting the drain pipes increased the value of defendant’s property.
Plaintiff contends that if its monitoring wells were not an improvement to defendant’s property, they were a “repair” to an existing improvement. Plaintiff makes the bald argument that all the work done “was undertaken as a repair of the property damaged by the chemical spills ...” (Plaintiff’s brief in opposition at 10.) Even viewing the facts in the light most favorable to plaintiff, the court must reject this argument. Although plaintiff would have liked to undertake the remediation or abatement process at defendant’s plant, it is uncontroverted that defendant terminated plaintiff prior to the beginning of the abatement process. All of the activities undertaken by plaintiff and delineated in plaintiff’s invoices relate to assessing chemical contamination and preparing a report for the DER.
*656 Plaintiff attempts to bootstrap its way to a lien by claiming that the monitoring wells it designed and installed would be used in the abatement process and thereafter. There is no ¿vidence that the monitoring wells were ever so utilized. On the contrary, the only evidence before the court is that the majority of the monitoring wells have been removed. Although the parties dispute whether plaintiff was in fact hired to supervise the abatement process, an issue which need not be decided, the court believes that, had plaintiff been permitted to continue providing services to defendant throughout the abatement process, that abatement process arguably would have been a “repair” to defendant’s property. However, the facts of this case make clear that the groundwater contamination was essentially the same when plaintiff was terminated on July 7, 1989 as it was when plaintiff began rendering its services in January 1989. Thus, as a matter of law, there was no repair made to any improvement existing on defendant’s property.
Therefore, the court finds as a matter of law that defendant is entitled to summary judgment on plaintiff’s mechanic’s lien claim because plaintiff effected neither improvement nor a repair on defendant’s property. The remaining issues in this action are now moot.
ORDER
And now, January 19, 1991, based upon the foregoing opinion, defendant’s motion for summary judgment on plaintiff’s mechanic’s lien claim is granted.