## CIRCUIT COURT OF FAIRFAX COUNTY

Belle View Condominium
Unit Owners' Association

v.

Drytech, Inc.

Case No. (Chancery) 188072

Belle View Condominium
Unit Owners' Association

v.

Topp Construction Service, Inc.

Case No. (Chancery) 188235

June 24, 2004

BY JUDGE R. TERRENCE NEY

This matter came before the Court on March 31, 2004, on Belle View Condominium Unit Owners' Association's (" Belle View" ) Petition to have three mechanic's liens declared invalid and removed from the land records.

*Facts*

Three memoranda of mechanic's liens in these consolidated matters were filed on December 29, 2003, one by Respondent Drytech, Inc. ("Drytech"),[1] and two by Respondent Topp Construction Services, Inc. ("Topp").[2]

Belle View is a 980-unit condominium complex located in the Mount Vernon section of Fairfax County by Dykes Marsh and the Potomac River. Belle View consists of sixty-five separate brick buildings which are two to three stories in height. On September 19, 2003, the basement floors of each of the sixty-five buildings flooded when Hurricane Isabel caused the Potomac River to crest over its banks and its waters overwhelm the dike system.

Belle View authorized Epic Design & Construction Co., Inc., t/a Purofirst of Metropolitan Washington ("Purofirst") to provide temporary emergency assistance with disaster relief and recovery. Purofirst hired Drytech as a subcontractor, and Drytech, in turn, hired Topp as sub-subcontractor to assist with the temporary emergency services for Belle View.

After four days of service, Belle View terminated Purofirst's contract. Belle View did not pay Purofirst for any of its work. In October 2003, Purofirst filed a Motion for Judgment against Belle View seeking to recover for its services.[3]

Purofirst, having not been paid by Belle View, did not pay Drytech. Drytech, having not been paid by Purofirst, did not pay Topp. Shortly thereafter, Drytech and Topp filed their separate memoranda of mechanic's liens, each claiming subcontractor liens on some or all of the Belle View property. Cumulatively, both claim liens in the amount of $644,179.34.

*Procedural History*

Belle View challenges the validity of each mechanic's lien. On February 27, 2004, the Court, pursuant to Virginia Code § 43-17.1, granted Belle

---

[1] Drytech's memorandum of mechanic's lien is in the amount of $526,024.34 for providing "flood drying and mold remediation of common areas and related items contained therein, with necessary and appropriate equipment, supervision, labor, and materials" against all of the Belle View owners for services to common areas.

[2] Topp's first memorandum of mechanic's lien is in the amount of $37,250.00 for "the rental of portable air conditioning equipment and related materials, including labor for delivery and removal of all equipment" against 85 individual unit owners. Its second memorandum of mechanic's lien is in the amount of $80,905.00 for "rental of portable dehumidifiers, generators, and related materials, including labor for delivery and removal of all equipment" against the Condominium Association as a whole.

[3] This action, *Epic Design & Construction Co., Inc., t/a Purofirst of Metropolitan Washington v. Belle View Condominium Unit Owners Association*, Law No. 217852, is currently pending in this Court.

View's request for a hearing to challenge the validity of all three liens. On March 12, 2004, these two actions were consolidated.

### Grounds for Review

> Any party, having an interest in real property against which a lien has been filed, may, upon a showing of good cause, petition the court of equity having jurisdiction wherein the building, structure, other property, or railroad is located to hold a hearing to determine the validity of any perfected lien on the property. After reasonable notice to the lien claimant and any party to whom the benefit of the lien would inure and who has given notice as provided in § 43-18 of the Code of Virginia, the court shall hold a hearing and determine the validity of the lien. If the court finds that the lien is invalid, it shall forthwith order that the memorandum or notice of lien be removed from record.

Va. Code Ann. § 43-17.1 (2002).

### Standard of Review

A mechanic's lien is purely a creature of statute and is in derogation of the common law. *See Rosser v. Cole*, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989). As a result, where, as here, there are questions concerning the existence and perfection of such a lien, the mechanic's lien statutes must be strictly construed. *See Woodington Elec., Inc. v. Lincoln Sav. & Loan Ass'n*, 238 Va. 623, 630, 385 S.E.2d 872, 875 (1989). Substantial compliance with the statute is essential or the lien will be lost. *See generally Wallace v. Brumnack*, 177 Va. 36, 13 S.E.2d 801 (1941); *see also Gilman v. Ryan*, 95 Va. 494, 497, 28 S.E. 875, 876 (1898). "It is therefore incumbent upon the party asserting a lien under the statute to show that he has complied with every essential requirement of the statute; and unless such compliance is shown, his claim must be rejected." [4]

---

[4] *Trustees Franklin St. Church v. Davis*, 85 Va. 193, 194-95, 7 S.E. 245, 246 (1888). Drytech and Topp contend that the burden is on Belle View to show that the memoranda of mechanic's liens are invalid. They contend that Belle View is seeking relief through Va. Code Ann. § 43-17.1, which authorizes it to seek this review, rather than under Va. Code Ann. § 43-17, which permits Drytech and Topp to enforce their mechanic's liens. Regardless of the burden, for the Court to resolve the validity of the liens, the Court must still determine whether the liens

At the same time, the mechanics lien act is remedial in nature and designed to provide a remedy to those persons furnishing labor or materials to others. It is against this background that the memoranda of mechanic's liens involved here must be reviewed.

## Analysis

The Belle View units are owned by hundreds of individual owners. Virtually all of the units are subject to liens that secure hundreds of purchase money mortgages. Drytech's and Topp's recorded memoranda of mechanic's liens, by their very nature, impede and prevent these owners and lenders from the resale and refinance of the Belle View Units.

Belle View attacks all three liens collectively and individually. First, Belle View claims that all of the mechanic's liens are for services that are not afforded mechanic's lien protection. Second, Belle View asserts that the liens impermissibly include public property and must fail in their entirety. Third, Belle View attacks Topp's lien against the entire Belle View Unit Owners Association because it does not name or apportion the amounts to the individual owners at Belle View. Fourth, Belle View challenges Topp's lien against 85 individual owners because the memorandum improperly and incorrectly names certain unit owners and also because the memorandum names unit owners who never received any services from Topp. Finally, Belle View challenges Drytech's lien because it alleges that Drytech's lien over-burdens units for which no services were provided. The Court will address each of these issues in turn.

## A. *Whether These Services Are Afforded Mechanic's Lien Protection*

Belle View notes that there are many kinds of work that are not protected by mechanic's lien rights. *Rosser*, 237 Va. at 577, 379 S.E.2d at 326 (1989). For example, if the work does not constitute "construction, removal, repair, or improvements of any building or structure permanently annexed to the freehold," then Belle View contends that no lien is available. *See* Va. Code Ann. § 43-3 (2002).

In support of its position, Belle View relies on a Pennsylvania decision which held that containment of ground water contamination pending remediation is not the type of service protected by Pennsylvania's mechanic's lien statute. *See Todd Giddings and Assocs., Inc. v. Avery Chemical*

---

are enforceable under Va. Code Ann. § 43-17. The analysis under either section requires the Court to ensure that the lien is either properly perfected or invalid.

*Division-Avery Int'l, Inc.*, 8 Pa. D. & C. 4th 649 (1991). Belle View also asserts that Virginia's mechanic's lien statute must be strictly construed and that it does not protect persons who rent portable air conditioners or dehumidifiers or those who pump water from basements or operate fans to prevent the development of mold.

The Supreme Court decided *Rosser v. Cole*, 237 Va. 572, 576, 379 S.E.2d 323, 325 (1989), prior to the amendment to Va. Code § 43-3. The 2002 amendment added the words "including the reasonable rental or use value of equipment." Va. Code Ann. § 43-3 (2002). Further, in *Todd Giddings*, the Pennsylvania Court held that the lien claimant did nothing more than assess the chemical contamination and prepare a report. There, the lien claimant's employment was also terminated prior to beginning the abatement process. *Todd Giddings*, 8 Pa. D. & C. 4th at 655.

Here, without question, Drytech and Topp's abatement of the water plainly affected "buildings or structures permanently annexed to the freehold." [5] Further, the statute specifically authorizes the lien claimant to include "the reasonable rental or use value of equipment." [6] The Court is of the opinion that the services claimed are afforded mechanic's lien protection.

## B. *Mechanic's Liens Upon Public Property*

Next, Belle View asserts that portions of the mechanic's liens improperly lie against public property, as forty of the Belle View Units are owned by Fairfax County whose property is exempt from the lien statutes. *See Thomas Somerville Co. v. Broyhill*, 200 Va. 358, 105 S.E.2d 824 (1958); *Manly Mfg. Co. v. Broaddus*, 94 Va. 547, 27 S.E. 438 (1897). Belle View argues that eliminating the forty Fairfax County owned units from the apportionment would overburden the remaining 940 non-public unit owners because they would become responsible for the County's share of the blanket lien. For example, instead of $526,042.34 being divided among 980 units, as in Drytech's lien, the $526,042.34 would be divided by 940 units.

In support of this contention, Belle View cites *Weaver v. Harland*, 218 Va. 915, 241 S.E.2d 804 (1978); *PIC Constr. Co. v. First Union Nat'l Bank*, 218 Va. 915, 241 S.E.2d 804 (1978); *West Alexandria Props., Inc. v. First*

---

[5] Va. Code Ann. § 43-3 (2002); *See also Cain v. Hawthorne*, 159 Va. 446, 451, 166 S.E. 478, 480 (1932) ("The language of our statute is general in its terms, and, in our opinion, embraces all persons who perform 'any labor'."); *accord Fort Beauregard Assocs., Inc. v. Lindsay Ervin & Assocs., Inc.*, 20 Va. Cir. 478 (Loudoun County 1990), which upheld a mechanic's lien filed by an architect because the architect went beyond merely planning the erection of the structure; rather the architect put his labor into the plans and actually supervised its construction.

[6] *Id.*

*Virginia Mortgage,* 221 Va. 134, 267 S.E.2d 149 (1980); *United Va. Mort. Corp. v. Haines Paving Co.,* 221 Va. 1047, 277 S.E.2d 187 (1981). Those cases, however, either involved memoranda of mechanic's liens that did not apportion amounts attributed to any individual unit owners resulting in an unjust burden-shifting or were decided prior to a 1980 amendment to Virginia Code Ann. § 43-3 which suggests that a blanket lien is valid even if invalid against some units as long as the lien has the appropriate apportionment of the percentage owed by each unit owner. *See* Va. Code Ann. § 43-3(a) (2002) (" In the event the lien is not perfected, the lien claimant shall upon request of any interested party execute lien releases for one or more units upon receipt of payment equal to that portion of the indebtedness attributable to such unit or units determined as herein provided but no such release shall preclude the lien claimant from perfecting a single lien against the unreleased unit or units for the remaining portion of the indebtedness." ). Further, in *B. T. Elec. Enter., Inc. v. ADC Fairways Corp.,* liens were held to be invalid as to fifteen units, but remained valid as to the remaining twenty-eight units as long as the lien amount was not reapportioned to the detriment of the remaining unit owners. 4 Va. Cir. 48, 54-56 (Fairfax County 1981).

In response, Drytech and Topp argue that not all public buildings receive a mechanic's lien exemption. For the mechanic's lien exception to apply, the public buildings must be used for *public purposes. See Jones v. Commonwealth,* 267 Va. 218, 222, 591 S.E.2d 72, 75 (2004) (quoting *Phillips v. Rector, etc., of Univ. of Va.,* 97 Va. 472, 474, 34 S.E. 66, 67 (1899)). Here Drytech and Topp note that there is no evidence demonstrating how Fairfax County uses its forty condominium units.

Further, even if the forty units owned by Fairfax County are excluded by the public buildings exception, Drytech and Topp assert that their liens against the remaining 940 non-publicly owned units are nonetheless valid, as they have correctly apportioned the amount owed by each particular unit owner. In support of their liens' validity, Drytech and Topp rely on *B. T. Elec. Enter., Inc. v. ADC Fairways Corp.,* 4 Va. Cir. 48, 54-56 (Fairfax County 1981); *accord Boehl v. BMW Restoration Co. of Va.,* 31 Va. Cir. 256 (Loudoun County 1993), where liens were held invalid as to fifteen units, but remained valid as to the remaining twenty-eight units as long as the lien amount was not reapportioned to the detriment of the remaining unit owners.

In 1989, the Supreme Court of Virginia left open the question of the validity of an over-inclusive memorandum when the lien claimant voluntarily attempts to back-out properties improperly included in the mechanic's lien in order to reach the proper amount for the property named in the lien. *Woodington Elec., Inc. v. Lincoln Sav. & Loan Assoc.,* 238 Va. 623, 385 S.E.2d 872 (1989). Specifically, the Court stated that "we express no opinion

as to the outcome in a situation where a mechanic files an over-inclusive memorandum yet voluntarily attempts to amend to limit the lien's reach to the proper amount of property." *Id.* at 634, 385 S.E.2d at 878, n. 2.

This is the situation presented here.

The forty units owned by Fairfax County are public property for purposes of the mechanic's lien statute.[7] Thus, they are exempt from the two mechanic's liens. This need not, however, invalidate the liens in their entirety.

No question has been raised by the parties as to the accuracy of the per unit apportionment. Both Drytech and Topp equally apportioned the amounts claimed in their respective memoranda of mechanic's lien to each individual unit owner.[8] As a result, the 940 unreleased unit owners do not suffer a shift in the lien burden from the forty released units. The percentage of indebtedness has not only already been apportioned, it remains apportioned in the same amount. The lien is not invalidated; rather, it merely cannot be enforced against the units owned by Fairfax County. *See B. T. Elec. Enter.*, 4 Va. Cir. at 55-56; *accord Boehl*, 31 Va. Cir. at 256-57. Thus, the mechanic's liens against the 940 non-publicly owned units are still valid, in the amount as currently apportioned. Such a result is not inconsistent with Virginia law. To the contrary, the Supreme Court presaged the possibility of such a result in *Woodington* at footnote 2. *See Woodington*, 238 Va. at 634, 385 S.E.2d at 878, n. 2.

Finally, this result is entirely consistent with § 55-79.46(B) of the Virginia Code which provides that individual condominium units may be released upon

---

[7] Fairfax County uses these units as public housing for low income families. This would seem to be analogous to the cases that held that "the eradication of slum areas and the adaptation of the property to a low-cost housing project, to be leased to tenants, was a public use and a valid exercise of the police power of the State." *Hunter v. Redevelopment Authority*, 195 Va. 326, 336, 78 S.E.2d 893, 899 (1953) (citing *Mumpower v. Housing Authority*, 176 Va. 426, 11 S.E.2d 732 (1940)). The Respondents, however, suggest that the Court may have to make a determination as to whether the Housing Authority is engaged in a governmental or proprietary function. *See Virginia Elec. & Power Co. v. Hampton Redevel. & Housing Auth.*, 217 Va. 30, 33, 225 S.E.2d 364 (1976). However, the Respondents miss the distinction between the government's immunity in tort cases, which could be lost, as in the case they rely on, and contractual cases or even the statutory exemption of mechanic's liens. Even if the Court did have to make a determination as to the categorical function of the property owned by Fairfax County, the Court would still find the use here to be a governmental use because the policy involved strives to provide a service to the public rather than for a financial gain for Fairfax County.

[8] This is with the exception of Topp's memorandum of mechanic's lien brought against the entire Belle View Condominium Unit Owners Association. This lien was not apportioned against each individual Belle View unit owner. A release of the forty units automatically shifts the entire burden of the lien to the remaining units. This plainly is impermissible.

payment without destroying the validity of the lien. Va. Code Ann. § 55-79.83 (2003). If an individually apportioned mechanic's lien should not fail as to unreleased units under that Code Section, then no reasoning suggests why it should fail here.

## C. Topp's Blanket Mechanic's Lien

Topp's second, other memorandum of mechanic's lien is filed against the entire Belle View Condominium Unit Owners Association. It is not apportioned against each individual Belle View unit owner. The Code clearly sets out the method of apportionment for this type of lien.

> Whenever a lien has been or may be perfected encumbering two or more units, the proportionate amount of the indebtedness attributable to each unit shall be the ratio that the percentage liability for common expenses appertaining to that unit computed pursuant to subsection D of § 55-79.83 bears to the total percentage liabilities for all units which are encumbered by the lien.

Va. Code Ann. § 43-3(A) (2002). Whether the apportionment is self-executing or not remains unclear. At this point only, the Court holds it is not.

Additionally, Topp's memorandum also does not "show the names of the owners of the property sought to be charged." *See* Va. Code Ann. § 43-4 (2002). The failure to name the individual unit owners and the failure to apportion, which is required of a blanket lien against a condominium complex, are fatal defects. This lien, therefore, is invalid.

## D. Topp's Mechanic's Lien Against 85 Individual Unit Owners

Belle View argues that Topp's memorandum of mechanic's lien against 85 individual units for services provided specifically to those units fails for two reasons.[9] First, Belle View argues that four of the units named in this memorandum are owned by Fairfax County and that one of the units names an incorrect owner due to a change in ownership prior to the recordation of this mechanic's lien. Second, Belle View argues that five other units named in the memorandum are units for which Topp never provided any services.

Both arguments may be dismissed for the same reasoning discussed in section B of this opinion. The liens are not invalid against the unreleased

---

[9] Belle View does not contend that the apportionment itself per unit is invalid.

units; they are merely unenforceable against the units owned by Fairfax County, the unit whose ownership changed hands prior to Topp's recordation of this memorandum, and the units for which no work was performed.

While it is true that the Supreme Court of Virginia has consistently held that a lien claimant may not record a mechanic's lien on property for which the mechanic has not done any work,[10] by excising those five units for which no work was done, Topp's mechanic's lien does not become over-inclusive as to the remaining lots.[11] The burden of each lien remains the same. Indeed, if anything, the benefited lots are under-apportioned because charges for work which was done are lost to the claimant by arithmetically spreading out the lien too thinly onto the unbenefited units. But such does not invalidate the lien as to the remainder.

### E. *Whether Drytech's Mechanic's Lien is Over-burdensome*

Belle View recognizes that it is proper to file a single lien encumbering more than one property. *Sergeant v. Denby*, 87 Va. 206, 12 S.E. 402 (1890). In instances, however, in which the interest of third parties may be affected, the lien claimant may not assert a lien against any one property for an amount in excess of the value added to that property. *See United Masonry, Inc. v. Jefferson Mews, Inc.*, 218 Va. 360, 237 S.E.2d 171 (1977); *Weaver v. Harlan Corp.*, 176 Va. 224, 10 S.E.2d 547 (1940). Belle View asserts that Drytech's mechanic's lien overburdens units for which no services were provided.

Specifically, Belle View contends that Drytech was required to record two separate memoranda of mechanic's liens. One lien would be against all of the owners for services rendered because they all benefited from the services provided for the "common areas," and a second lien against the owners who benefited individually from services provided only to those unit owners. Essentially, Belle View argues that it is not permissible to combine work done to both common elements and individual condominium units into one mechanic's lien. Significant to Belle View's argument is that the services and rental equipment that Drytech claims it used only for common areas were also used for some individually owned units. Further, Belle View asserts that services and rental equipment claimed to be used only for individually owned units were in fact used in common areas.

---

[10] *See Woodington Elec., Inc. v. Lincoln Sav. & Loan Assoc.*, 238 Va. 623, 385 S.E.2d 872 (1989); *Rosser v. Cole*, 237 Va. 572, 379 S.E.2d 323 (1989); *United Masonry, Inc. v. Jefferson Mews, Inc.*, 218 Va. 360, 237 S.E.2d 171 (1977).

[11] At oral argument, Topp conceded that there were five units named in its memorandum that never benefited from its services.

Drytech filed one memorandum of mechanic's lien against Belle View. In its memorandum, it expressly indicates that its claim is for work done to the "common areas" of the complex. Therefore, Drytech contends, the argument made by Belle View does not apply because it has not combined services provided to the individual unit owners with services provided to the common areas. Drytech argues that its lien does not co-mingle services benefiting common areas with services benefiting individual units. Rather, it specifically "backed-out" services to any individual units *prior* to apportioning the amounts attributed to the entire ownership of Belle View. By doing so, Drytech claims that all of the remaining services are attributed only to the common areas at Belle View.

This Court holds that a lien claimant may voluntarily back-out services attributed to other properties not named in the memorandum in order to reach the proper amount for the properties to be subject to the recorded lien. In doing so, however, the lien claimant must ensure that the amount claimed on each property is an accurate reflection of the amount attributed to those properties benefiting from the work performed.

It is not possible, however, to determine, at this stage, how Drytech backed-out the services attributed to the individual units based on the evidence before the Court. In order to determine whether the proper amount is claimed and apportioned in its lien, further evidence is necessary.

## Conclusion

For these reasons, the Court determines as follows.

The services provided here may properly be included in the memoranda of mechanic's liens.

Topp's properly apportioned memorandum of mechanic's lien against 85 individual owners is valid as to the units properly named less the public units, the incorrect unit, and those units for which no work was performed.

Drytech's memorandum of mechanic's lien is also valid as to those units properly named which are not public property.

As for Topp's blanket memorandum of mechanic's lien against the entire Belle View Condominium Unit Owners Association, it is invalid because it failed to properly name and apportion the amount of its lien.

In addition, Drytech's memorandum of mechanic's lien, however, may or may not be over-inclusive. The Court appoints Timothy J. Bird as Commissioner in Chancery to determine whether Drytech included in its lien any services attributable to any individual unit owners.

*Orders*

*Belle View Condominium Unit Owners' Assn. v. Drytech, Inc.*

This cause came before the Court upon Belle View Condominium Unit Owners' Association's Petition to have Drytech, Inc.'s mechanic's lien declared invalid and removed from the record; and

It appearing to the court that Drytech, Inc., filed a memorandum of mechanic's lien against the Belle View Condominium ownership on December 29, 2003; and

It further appearing to the court that the services claimed by Drytech, Inc., may be properly included in its memorandum of mechanic's liens; and

It further appearing to the court that Drytech, Inc., filed one properly apportioned memorandum of mechanic's lien against the entire Belle View Condominium ownership, which is valid as to the units properly named which are not public property; and

It further appearing to the court that Drytech, Inc., has attempted to back-out services attributed to individual unit owners prior to apportioning the amounts attributed to the entire Belle View ownership; and

It further appearing to the court that a Commissioner in Chancery should hear evidence as to whether Drytech, Inc., did not include in its lien any services attributed to the individual units owners prior to apportioning its lien; it is

Adjudged, ordered, and decreed that Timothy J. Bird, Esquire, is appointed as Commissioner in Chancery to determine the method utilized by Drytech, Inc., when it backed-out any service attributed to any individual owners.

*Belle View Condominium Unit Owners' Assn. v. Topp Const. Service, Inc.*

This cause came before the Court upon Belle View Condominium Unit Owners' Association's Petition to have Topp Construction Service, Inc.'s two mechanic's liens declared invalid and removed from the record; and

It appearing to the court that Topp Construction Service, Inc., filed two memoranda of mechanic's lien against the Petitioner Belle View Condominium Unit Owners' Association on December 29, 2003; and

It further appearing to the court that the services claimed by Topp Construction Service, Inc., may be properly included in its memoranda of mechanic's liens; and

It further appearing to the court that Topp Construction Service, Inc., filed one blanket memorandum of mechanic's lien against the entire Belle View

Condominium Unit Owners' Association which is invalid because it fails to properly name and apportion the amount of the blanket lien to the individual owners; and

It further appearing to the court that Topp Construction Service, Inc., filed one properly apportioned memorandum of mechanic's lien against eighty-five individual unit owners which is valid as to the units properly named, less the public units, less one improperly named unit, and less those units for which no services were rendered; and it is

Adjudged, ordered, and decreed that Topp Construction Service, Inc.'s blanket memorandum of mechanic's lien filed against the entire Belle View Condominium Unit Owners' Association is invalid and shall be removed from the land records; and it is further

Adjudged, ordered, and decreed that Topp Construction Service, Inc.'s memorandum of mechanic's lien against eighty-five individual unit owners is valid as to the units properly named, less the public units, less the incorrectly named unit, and less those units for which no services were rendered.